UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                         :

                                         :

                                         :                 21 Civ. 2002 (LGS)

In re XL Fleet Corp. Securities Litigation      :

                                         :         **OPINION AND ORDER**

                                         :

                                         :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Lead Plaintiff Delton Rowe and additional plaintiffs Jeffrey Suh, Carl Enslin, Simone

Heridis and Soraya Matamoros (collectively, the "Plaintiffs"), individually and purportedly on

behalf of all others similarly situated, bring this securities fraud action against Defendants

Jonathan J. Ledecky, James H.R. Brady, Kevin Griffin, Thomas J. Hynes III, Dimitri Kazarinoff,

Brian Piern (collectively, the "Individual Defendants") and XL Fleet Corp.  The Amended

Consolidated Complaint ("Complaint") alleges violations of § 10(b) of the Exchange Act, 15

U.S.C. § 78j(b), and Rule 10b-5 against all Defendants and § 20(a) of the Exchange Act against

the Individual Defendants.  Defendants move to dismiss the Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6).  For the reasons stated below, the motion is denied.

**I.      BACKGROUND**

        The following facts are taken from the Complaint and are assumed to be true for

purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959

F.3d 509, 512 (2d Cir. 2020).

        On September 18, 2020, Pivotal Investment Corp. II ("Pivotal"), a special purpose

acquisition company, announced a merger agreement with XL Hybrids, Inc. ("Hybrids").  The

merger was completed in December 2020, resulting in the formation of Defendant XL Fleet

Corp. ("XL Fleet").  (When used in connection with pre-merger activities, "XL Fleet" refers to

Pivotal and/or Hybrids, which is similar to the approach in the Complaint.)  XL Fleet provides vehicle electrification solutions for commercial and municipal Fleets in North America.  Its common stock and warrants trade on the New York Stock Exchange under the symbols "XL" and "XL WS."

In announcing the merger on September 18, 2020, XL Fleet made statements in a joint press release, which was the first of many statements in press releases, SEC filings, and media appearances about XL Fleet's revenues, sales pipeline and technology.  Plaintiffs allege that many of these statements were materially false and misleading.  The case is brought on behalf of a putative class of persons and entities that purchased or otherwise acquired XL Fleet securities between September 18, 2020, and March 31, 2021 (the "Class Period").

In addition to claims against XL Fleet, the Complaint asserts claims against the Individual Defendants.  Jonathan Ledecky was the Chairman and CEO of Pivotal and remained as a director of XL Fleet after the merger.  James H.R. Brady served as Pivotal's Chief Financial Officer.  Kevin Griffin was a director of Pivotal and later XL Fleet.  Ledecky, Brady and Griffin are the "Pivotal Individual Defendants."  Thomas J. Hynes founded Hybrids and served as its Chief Strategy Officer until the merger, when he became a director and the President of XL Fleet.  Dimitri Kazarinoff was the CEO of Hybrids, and post-merger became CEO and a director of XL Fleet.  Brian Piern was XL Fleet's Vice President of Sales and Marketing from January 2019 through May 2021.  Hynes, Kazarinoff and Piern are the "XL Individual Defendants."

The Complaint alleges facts based in part on confidential witnesses and a third-party research report.  The confidential witnesses are all former employees of XL Fleet who reported to Piern and worked in sales.  The report was published by Muddy Waters Research ("Muddy Waters"), on March 3, 2021, describing issues at XL Fleet, including that XL Fleet inflated its

sales pipeline.  A copy of the report is appended to the Complaint.  On news of the Muddy

Waters report, the XL Fleet share price fell 13%.

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and

draws all reasonable inferences in favor of the non-moving party but does not consider

"conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von*

*Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999

F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F3d 183, 189

(2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the

complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (first alteration in original); *accord Bensch v.*

*Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the

grounds upon which [their] claim rests through factual allegations sufficient to raise a right to

relief above the speculative level."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir.

2019) (alteration in original) (internal quotation marks omitted).

To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege that each

defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in

connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that

the plaintiff's reliance was the proximate cause of its injury." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021).

"A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021).  The heightened pleading standard of Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

The PSLRA expanded on Rule 9(b)'s pleading standard, requiring that securities fraud complaints "specify" each misleading statement; that they set forth the facts "on which [a] belief" that a statement is misleading was "formed" and that they "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1)-(2).  "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

"To establish scienter, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap. LLC*, 996 F.3d at 78 (internal quotation marks omitted).  The sufficiency of a complaint's allegations of scienter are evaluated "'holistically' considering 'all of the facts alleged, taken collectively,' rather than 'any individual allegation, scrutinized in isolation.'"  *Id.*  (quoting *Tellabs, Inc.*, 551 U.S. at 323, 326).  "For an inference of scienter to be strong, as required by the PSLRA, a reasonable person must

deem it cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." *Id.* (internal quotation marks omitted).  "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (citations and internal quotation marks omitted); *accord Gray v. Alpha & Omega Semiconductor, Ltd.*, No. 20 Civ. 2414, 2021 WL 4429499, at *10 (S.D.N.Y. Sept. 27, 2021).

    "Where a defendant is a corporation, this requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (internal quotation marks omitted).  "[M]ost courts look to the discrete roles played by the corporate actors who are connected to the alleged misrepresentation to determine which (if any) fall within the locus of a company's scienter." *Id.*  "Under this approach, the most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement." *Id.* (internal quotation marks omitted).  But, "[i]n exceedingly rare instances, a statement may be so dramatic that collective corporate scienter may be inferred." *Id.* (internal quotation marks omitted).

    "In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009); *accord In re Wells Fargo & Co. Secs. Litig.*, No. 20 Civ. 4494, 2021 WL 4482102, at *27 (S.D.N.Y. Sept. 30, 2021).  "This can consist of allegations as to who possessed . . . knowledge of the fraud, when and how they obtained [that] knowledge, or even why they should have known of the fraud." *In*

*re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d at 695 (alteration in original) (internal quotation marks omitted).

To state a claim under § 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (internal quotation marks omitted); *accord UA Local 13 Pension Fund v. Sealed Air Corp.*, No. 19 Civ. 10161, 2021 WL 2209921, at *8 (S.D.N.Y. June 1, 2021).

## III.    DISCUSSION

### A.    Violation of § 10(b) and Rule 10b-5

The Complaint sufficiently alleges a securities fraud claim under § 10(b) and Rule 10b-5. Defendants argue the Complaint fails to allege falsity and scienter.  These arguments are unavailing.

#### 1.  Falsity

The Complaint alleges that five categories of statements by Defendants were false.  At least one of these categories -- statements about XL Fleet's sales pipeline and revenue projections -- is sufficiently alleged and warrants denial of the motion to dismiss.  That category, but not the others, is discussed below.

Under the PSLRA, a plaintiff adequately pleads falsity if he or she "specif[ies] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1)(B).  Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17

C.F.R. § 240.10b-5(b).  "[L]iability for making a false statement of opinion may lie if either 'the speaker did not hold the belief she professed' or 'the supporting fact she supplied were untrue.'" *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare, Inc. v. Laborers Dist. Couns. Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)).  A reasonable investor, upon hearing a statement of opinion from an issuer, "expects not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at a time."  *Omnicare*, 575 U.S. at 188-89.

The Complaint alleges that the following statements regarding XL Fleet's sales pipeline and revenue are misleading, as well as other statements on other topics.  A September 18, 2020, press release issued by Pivotal and Hybrids, states that "XL has strong demand momentum with a $220 million 12-month sales pipeline and forecasted revenue of over $21 million in 2020 and $75 million in 2021."  On a September 18, 2020, call to discuss the merger between Pivotal and Hybrids, Kazarinoff stated "[w]e have a 12-month rolling sales pipeline of more than 220 million dollars in potential new business opportunities."  The October 2, 2020, Registration Statement, which was signed by Ledecky, Brady and Griffin, and filed with the SEC, includes the $21 million and $75 million expected revenue figures.  An October 26, 2020, press release, which was also attached to a Form 8-K signed by Ledecky and filed with the SEC, makes the same claims regarding XL Fleet's sales pipeline and forecasted revenue.  On an October 26, 2020, webinar, Kazarinoff announced a sales pipeline of over $240 million.  On November 12, 2020, Pivotal filed an amendment to the October 2, 2020, Registration Statement, which states that XL management uses the sales and marketing team's sales tracking data to create "projections about future aggregate sales pipeline opportunities."  The amendment also states that "XL management reviews its sales opportunity pipeline data and applies its historic

conversion rates of sales pipeline and historical experience with respect to lead time to create revenue projections." On November 12, 2020, XL Fleet issued a press release, which was filed with the SEC by Pivotal, reverting to the $220 million 12-month sales pipeline figure.

The Complaint alleges that these statements were misleading because they failed to disclose that XL Fleet's pipeline was materially overstated due to data manipulation by XL management in the following ways. Piern regularly instructed employees to record sales opportunities without a reasonable basis, record inflated percentage likelihoods of sales and maintain pre-existing entries in the records after customers indicated that they would not order XL Fleet's products. According to one former employee, in late 2019, Piern directed the employee to enter sales opportunities from companies after an initial general conversation that lacked detail to expect any orders, and to enter sales opportunities even if the employee had not spoken to anyone at the company recorded and regardless of whether those companies had vehicles compatible with XL Fleet products. The Complaint alleges that another former employee recounted being instructed by Piern in the third quarter of 2020 to record a sales opportunity for a single year, even though the customer had stated that any purchase would be spread out over a multiple year period. The former employee also stated that sales opportunities were recorded with a 25% likelihood merely because XL Fleet transmitted pricing information to a customer, even if that customer had not expressed interest. The former employee believes this and other practices overstated the sales pipeline. The Complaint alleges that a third former employee recounted that Piern artificially inflated the probability of sales figures by altering the employee's judgments of the likelihood of a sale from 25% up to 75%.

The aforementioned allegations sufficiently plead with particularity that the sales pipeline and revenue figures were misleading. First, the Complaint alleges, with particularity,

facts showing that the pipeline figures were exaggerated and inflated without sufficient basis. Second, the Complaint alleges that the statement explaining the methodology for the pipeline and revenue forecasting, that it was keyed to historical conversion rates, was misleading. Defendants' arguments to the contrary are unavailing.

First, Defendants argue that the allegations do not support an inference of falsity because the claim of "frequent" and "regular" inflation of sales probabilities are conclusory. This argument is misplaced because the Complaint alleges multiple examples of baseless manipulation of sales probabilities totaling millions of dollars in projected sales, which suffice to allege that the sales pipeline and revenue statements were misleading, independent of the allegation regarding the frequency of the manipulation.

Second, Defendants argue that the only victim of Piern's exaggerations was the Board of Directors of XL Fleet because the Complaint does not suggest the exaggerated figures were used for any purpose other than reports to the Board. Contrary to Defendants' argument, the Complaint alleges that the exaggerations were incorporated into public statements. The Complaint also alleges that the November 12, 2020, Amendment to the Registration Statement states that XL Fleet management uses its sales opportunity pipeline data, including the sales and marketing team's tool for tracking sales opportunities, to create revenue projections.

Third, Defendants argue that the allegations regarding sales pipeline figures do not support an inference of falsity because the Complaint does not provide context about the adjustments, for example that the probabilities are not in line with other companies' sales probabilities or XL Fleet's own experiences. To the contrary, the Complaint explains that the sales employees found that the probabilities did not align with their experiences. In any event, at least one former employee alleged that sales probabilities were recorded for a potential customer

who could not even purchase XL Fleet's product because it was not compatible with the customer's vehicles.  Regardless of whether other companies maintained the same practice, that allegation, taken in context with the other allegations, is sufficient to plead an inference of falsity in the sales pipeline and revenue figures.

Defendants' arguments about the unreliability of the confidential witnesses are unavailing.  "[W]here plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false."  *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); *accord Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797-98 (S.D.N.Y. 2020).  Here, the Complaint alleges facts to corroborate the confidential sources.  First, the Complaint alleges the business role of each confidential source, which provides a basis to conclude that the source was aware of the information they discussed.  Second, the allegations based on the confidential sources are corroborated by the Muddy Waters report, which is proper for consideration at this stage of the litigation because it is appended to the Complaint and has indicia of reliability.  Those indicia include claims in the report that XL Fleet admitted were true or did not deny.  For example, XL Fleet admitted the report's disclosure that XL Fleet had lost a certain regulatory approval in California and consequently could not sell in that market; yet according to the Complaint, XL Fleet continued to record California sales opportunities.  Another example is that in its response to the report, XL Fleet did not deny that its pipeline numbers were falsely exaggerated.  The Muddy Waters report apparently was deemed credible by the market as reflected in the significant drop in XL Fleet's share price on the day the report was published as well as the next trading day.  "The majority of courts . . . have held that a short-seller report, such as the Muddy Waters Report . . . does not implicate the same skepticism as a traditional

anonymous source." *McIntire v. China Mediaexpress Holdings*, 927 F. Supp. 2d 105, 123-24 (S.D.N.Y. 2013) (internal quotation marks omitted); *accord In re Hebron Tech. Co.*, No. 20 Civ. 4420, 2021 WL 4341500, at *13 (S.D.N.Y. Sept. 22, 2021).  Defendants' concern regarding the temporal disconnect between the Relevant Period and some of the confidential allegations is unwarranted because the temporal difference is minor and "allegations concerning activity in one period can support an inference of similar circumstances in a subsequent period," *Emp.s' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015).

### 2.   Scienter

 The Complaint alleges facts that give rise to the requisite "strong inference of scienter." To plead scienter, a complaint may either "(1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap. LLC*, 996 F.3d at 78.  "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).  Plausible allegations that a defendant "knew facts or had access to information suggesting that their public statements were not accurate" supports a culpable inference of conscious misbehavior or recklessness.  *Set. Cap. LLC*, 996 F.3d at 79.

Here, the Complaint alleges facts that, if true, constitute strong circumstantial evidence of conscious misbehavior or recklessness.  The Complaint alleges that XL Fleet's vice president of sales and marketing pressured employees to inflate sales probabilities and also exaggerated sales probabilities to inflate XL's pipeline and that those inflated figures were incorporated into

XL Fleet's revenue projections.  The Complaint also alleges that XL Fleet stated that its revenue projections were based on historical conversion rates, although they were actually based on manipulated data.  Further, one former employee states that she disclosed the overstated sales pipeline to Pivotal's attorneys during the diligence process for the merger.

These allegations make the inference that Defendants intentionally or recklessly misled the behavior more compelling than an inference that Defendants acted non-culpably.[1]  At the least, the November 12, 2020, statement that XL Fleet's revenue projections were based on historical conversion rates coupled with the multiple alleged instances of projections based on manipulated data and the reporting of manipulation by a former employee to Pivotal lawyers sufficiently alleges that the defendants "knew facts or had access to information suggesting that their public statements were not accurate," *Set. Cap. LLC*, 996 F.3d at 79.

The Complaint's allegations that Pivotal directors, including Ledecky, Griffin and Brady, were substantially involved in conducting due diligence into XL Fleet, including its financial projections, supports a finding of conscious misbehavior or recklessness as to those three individuals.  The Complaint's allegations that Piern reported directly to Hynes and Kazarinoff, that they worked directly with Piern on setting sales targets and projecting sales, and had intimate knowledge of XL Fleet's operations, including its sales projections, support a finding of scienter as to Hynes, Kazarinoff and Piern.  The scienter of Hynes and Kazarinoff, who served successively as CEO of XL Fleet, can be imputed to XL Fleet.  *See Jackson*, 960 F.3d at 98; *Constr. Laborers Pension Trust v. CBS Corp.*, 433 F. Supp. 3d 515, 549 (S.D.N.Y. 2020).

---

[1] Defendants do not rely on the safe harbor for forward-looking statements, and do not assert that "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]" were made.  15 U.S.C. § 78u-5(c)(1)(A)(i).

### B.      Liability of Piern

Defendants' motion to dismiss the § 10(b) claim against Piern is denied without prejudice.  Defendants argue that Piern cannot be directly liable under § 10(b) because the Complaint does not allege that he determined the contents of any SEC filings, participated in drafting the filings, or disseminated or made any of the statements that are the basis of this lawsuit; and so, at most, he is an aider and abettor not subject to direct liability to investors.  This argument is unpersuasive, and Defendants cite no authority that compels a different result.

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security" a "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b).  Rule 10b-5 proscribes three types of conduct:

(a) [t]o employ any device, scheme, or artifice to defraud,

(b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  These three subsections "capture a wide range of conduct" and do not govern "different, mutually exclusive spheres of conduct." *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101-02 (2019).  For purposes of subsection (b), "the maker of a statement is the person or entity with authority over the content of the statement and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 143-44 (2011).  Subsections (a) and (c) "require only deceptive conduct." *Plumber & Steamfitters Local 773 Pension Fund v.*

*Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021).  To state a scheme liability claim under these subsections, a plaintiff must show: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance."  *Id.* (internal quotation marks omitted).  "[T]he deceptive or fraudulent scheme or activity must have occurred 'in connection with the purchase or sale of a[] security.'"  *Id.* (quoting 17 C.F.R. § 240.10b-5) (second alteration in original).

Here, the Complaint alleges facts sufficient to show that Piern employed a scheme to defraud investors and engaged in a practice that operated as a fraud upon persons who purchased XL Fleet securities.  Defendants' primary argument is that Piern's conduct is too remote from the fraud alleged.  But the Complaint alleges facts from which the inference can be drawn that, at a minimum, Piern must have been aware that his false reports about projected sales would be passed on to investors and materially impact their view of the company and its financial prospects.  He reported directly to, and met frequently with, CEO Hynes, and thereafter his successor, CEO Kazarinoff.  Piern's team was responsible for preparing the data that XL management used to create XL Fleet's revenue projections.  The statements issued to investors directly highlight the role of Piern's team in "track[ing] all sales opportunities to existing and potential customers."  Investors relied on that data directly when reviewing XL Fleet's revenue projections and sales pipeline.  Based on these facts, the Complaint alleges facts sufficient to satisfy all of the elements of Rule 10b-5 scheme liability against Piern.  Nevertheless, because the Second Circuit has not yet addressed the question of whether liability may lie in these circumstances, the denial of the motion to dismiss Piern as a Defendant is without prejudice to renewal should there be a clear and contrary statement of law from the Second Circuit or the Supreme Court before the conclusion of the case.

Defendants' reliance on *Janus* and *Lorenzo* does not change the conclusion that the Complaint sufficiently alleges a claim against Piern. *Janus* addressed the limitations of Rule 10b-5(b), *see Janus*, 546 U.S. at 142-43 (focusing on the meaning of Rule 10b-5(b)), not Rule 10b-5(a) or (c), which Plaintiffs rely upon here). *Lorenzo* held that disseminators of misstatements could be liable for violating Rule 10b-5(a) or (c), *Lorenzo*, 139 S. Ct. at 1100-01, but *Lorenzo* does not state that someone must disseminate a misstatement to be liable under those subsections.

Defendants' reliance argument is also unpersuasive. Defendants, citing the Supreme Court's opinion in *Stoneridge Investment Partners, LLC, v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), argue that there is no basis for finding reliance because there is no conduct by Piern that investors were aware of to rely upon. "Reliance in a 10b-5 action ensures 'a proper connection between a defendant's misrepresentation and a plaintiff's injury.'" *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 482 (2d Cir. 2018) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011)). "'The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was [personally] aware of a company's statement' and purchased shares based on it." *Id.* (quoting *Halliburton Co.*, 563 U.S. at 810) (alteration in original). "[R]eliance is tied to causation, leading to the inquiry whether respondents' acts were immediate or remote to the injury." *Stoneridge Inv. Partners*, 552 U.S. at 160. In *Stoneridge*, the Supreme Court found there was no reliance where investors sought to sue an issuer's suppliers and customers for their role in accepting overpayments from the issuer and returning those overpayments back to the issuer, which the issuer used to manipulate its financial statements. *Id.* at 154, 159. The Supreme Court held that the investors "cannot show reliance upon any of respondents' actions except in an indirect chain that we find too remote for

liability." *Id.* at 159. Here, Piern's alleged conduct is not indirect or remote as was the conduct of the suppliers and customers in *Stoneridge*. To the contrary, Piern's role in generating the underlying pipeline and revenue projection data for XL Fleet was directly communicated to investors in the November 12, 2020, Amendment. That Amendment highlighted the contribution of the sales and marketing team, which Piern led, to the creation of "sales opportunity pipeline data." The scheme orchestrated or overseen by Piern is the scheme that directly misled investors about XL Fleet's sales pipeline and revenue prospects and Piern is alleged to have had a central role in the scheme.

### C. Violation of § 20(a)

The Complaint pleads a § 20(a) claim. The sole argument Defendants advance in opposition to Plaintiffs' § 20(a) claim is that there is no viable claim for a primary violation. Because the Complaint pleads a primary violation under § 10(b), there is no reason to dismiss the § 20(a) claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. Defendants' request for oral argument is DENIED as moot.

The Clerk of Court is respectfully directed to close the motion at Docket Number 84.

Dated: February 17, 2022
      New York, NY

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**