**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE XL FLEET CORP. SECURITIES LITIGATION | Case No. 1:21-cv-02002-JLR |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     NATURE OF THE ACTION .................................................................................. 2

III.    PROCEDURAL HISTORY..................................................................................... 3

IV.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E).................... 3

        A.    Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement
              Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To
              Grant Final Approval ................................................................................... 3

V.      ARGUMENT........................................................................................................ 5

        A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors
              Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors ........................ 5

              1.    Plaintiffs And Lead Counsel Adequately Represented The Class.............. 5

              2.    The Settlement Is The Result Of Arm's Length Negotiations.................... 6

              3.    The Settlement Is An Excellent Result For The Class In Light Of The
                    Benefits Of The Settlement And The Risks Of Continued Litigation ........ 7

                    a.    Complexity, Expense And Duration Of Litigation ......................... 7

                    b.    Establishing Liability And Damages ............................................. 8

                    c.    Risks Of Maintaining Class Action Status.................................. 10

                    d.    Range Of Reasonableness In Light Of The Best Possible Recovery
                          And Attendant Risks Of Litigation .............................................. 11

              4.    Rule 23(e)(2)(C)(iii)-(iv) ............................................................ 12

              5.    The Settlement Treats All Settlement Class Members Equitably Relative To
                    Each Other ...................................................................................... 13

              6.    The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of
                    Preliminary Approval................................................................ 14

        B.    Certification Of The Settlement Class For Settlement Purposes Is Appropriate.. 15

              1.    The Settlement Class Satisfies The Requirements Of Rule 23(a) ............ 16

              2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ....... 18

3.    The Court Should Appoint Lead Counsel As Counsel For The Settlement Class ................................................................................................... 20

4.    The Court Should Approve The Proposed Form And Method Of Notice To The Settlement Class ............................................................................... 20

VI.    PROPOSED SCHEDULE OF EVENTS ........................................................................ 23

VII.    CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................ 15, 18, 20

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................................ 9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)................................................................................................. 5

*Baker v. SeaWorld Entm't, Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020) .................................................................... 22

*Beach v. JPMorgan Chase Bank, N.A.*,
2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ...................................................................... 4

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F.Supp. 209 (S.D.N.Y. 1992) ................................................................................... 10

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................. 13

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................... 4, 7

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004).............................................................................. 21

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................................. 7

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).............................................................................................. 15

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ...................................................................... 8

*In re "Agent Orange" Prods. Liab. Litig.*,
597 F.Supp. 740 (E.D.N.Y. 1984) ................................................................................... 11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................................... 22

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. April 6, 2006) ................................................................ 19

*In re Aphria, Inc. Sec. Litig.*,
342 F.R.D. 199 (S.D.N.Y. 2022) ........................................................................ 16, 17

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................ 9

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................... 14

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................................... 7

*In re Citigroup, Inc. Sec. Litig.*,
965 F.Supp.2d 369 (S.D.N.Y. 2013)....................................................................... 14

*In re EVCI Career Colls.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................................ 5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F.Supp.3d 394 (S.D.N.Y. 2018)........................................................................ 6

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................... 7, 8, 10

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 14

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................... 14

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................................... 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................. 6

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ............................................................................. 17

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) ............................................................................. 5

iii

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ......................................................................................... 4

*In re Petrobras Secs.*,
   862 F.3d 250 (2d Cir. 2017)............................................................................................. 16

*In re Twinlab Corp. Sec. Litig.*,
   187 F.Supp.2d 80 (E.D.N.Y. 2002) ................................................................................. 18

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................. 18, 19

*Kalnit v. Eichler*,
   99 F.Supp.2d 327 (S.D.N.Y. 2000) ................................................................................... 8

*Maley v. Del Global Tech. Corp.*,
   186 F.Supp.2d 358 (S.D.N.Y. 2002)................................................................................ 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)......................................................................................................... 22

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................................................... 19

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)............................................................................................. 18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ......................................................................................... 9

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................................. 21

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) .................................................................................. 20, 21

*Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*,
   2022 WL 986071 (S.D.N.Y. Mar. 31, 2022) ................................................................... 16

*Villella v. Chem. And Mining Co. of Chile, Inc.*,
   333 F.R.D. 39 (S.D.N.Y. 2021) ....................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................................. 5, 6

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982)......................................................................................... 15

*Wilson v. LSB Indus. Inc.,*
   2018 WL 3913115 (S.D.N.Y. Aug. 12, 2018)............................................................ 20

STATUTES

15 U.S.C. § 78u-4(a)(7) ...................................................................................... 21, 22

RULES

Fed. R. Civ. P. 23 .................................................................................................*passim*

Lead Plaintiff Delton Rowe, and additional named plaintiffs Jeffrey Suh, Carl Enslin, Simone Heridis, and Soraya Heridis (née Matamoros) (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated December 6, 2023 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Settlement Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

## I.      PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants[2] in exchange for a non-reversionary, all cash payment of $19.5 million (the "Settlement Amount") for the benefit of the Settlement Class. This is an excellent result and represents a recovery of approximately 3.9 to 7.8% of the ***maximum*** recoverable damages related to the pending claims, which is well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2022. Thus, the Settlement is substantively fair.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Gregory B. Linkh in Support of Plaintiffs' Unopposed Motion for (i) Preliminary Approval of Class Action Settlement; (ii) Certification of the Settlement Class; and (iii) Approval of Notice to the Settlement Class ("Linkh Decl."), filed concurrently herewith.

[2] Defendants are XL Fleet Corp. (now d/b/a "Spruce Power"), Dimitri Kazarinoff (XL Fleet's CEO), Thomas J. Hynes III (XL Fleet's founder and Chief Strategy Officer), Brian Piern (XL Fleet's VP of Sales), Jonathan Ledecky (Pivotal's CEO and co-founder), James H.R. Brady (Pivotal's CFO), and Kevin Griffin (Pivotal's director and co-founder).

The Settlement is also procedurally fair. By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel had: (i) completed fact discovery, which included the targeted review and analysis of almost 1.2 million pages of documents and the taking of 21 depositions; (ii) filed their Motion for Class Certification, and (iii) engaged in extensive mediation efforts with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS. The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below, Plaintiffs and their counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court grant the Settlement preliminary approval.

## II.    NATURE OF THE ACTION

This securities fraud case is based on Plaintiffs' allegations of a falsely promoted merger between the Pivotal SPAC and a struggling electric vehicle company called XL Fleet. Plaintiffs allege that throughout the September 18, 2020 through March 31, 2021, inclusive, Settlement Class Period, in an effort to secure investor approval for their proposed merger and maintain the Company's artificially inflated share price following the approval of the merger, Defendants—in violation of the federal securities laws—materially misrepresented XL Fleet's business prospects. Specifically, Plaintiffs allege that Defendants knowingly withheld material information from investors concerning XL Fleet's: (i) inflated sales pipeline, (ii) broken supply chain, (iii) inactive "customer base", (iv) poor fuel economy results, (v) lack of regulatory approvals required to sell in California, and (vi) baseless revenue projections.

On March 3, 2021, investment research firm Muddy Waters published a report based on interviews with former XL Fleet employees, that Plaintiffs allege partially revealed the truth about XL Fleet's business. CAC ¶ 31. Mere weeks later, on March 31, 2021 (the end of the Settlement Class Period), XL Fleet announced its fourth quarter and full year 2020 results, revealing that it was (i) projecting only $1 million in first quarter 2021 revenue, and (ii) withdrawing its forecast of $75 million in 2021 revenue. *Id.* at. ¶ 205. Investors were shocked by the sudden reversal, and XL Fleet's stock price fell by 12.1% to close at $7.89 per share on April 1, 2021, on exceptionally high trading volume. *Id.* at ¶ 210.

## III.    PROCEDURAL HISTORY

The Linkh Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of: the initial complaints and the Lead Plaintiff appointment process (*id.*, at ¶ 2); the amended complaint and the motion to dismiss (*id.*, at ¶ 3); discovery and class certification, (*id.*, at ¶¶ 4-5); and mediation and settlement (*id.*, at ¶¶ 7-9).

## IV.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A.    Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[3] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A) have the class representatives and class counsel adequately represented the class;
(B) was the proposal negotiated at arm's length;
(C) is the relief provided for the class adequate, taking into account:
  (i) the costs, risks, and delay of trial and appeal;
  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
  (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors" traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Second Circuit's Grinnell factors (certain of which overlap with Rule 23(e)(2)) are, therefore, still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[4] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

---

[4] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

## V.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors

#### 1.    Plaintiffs And Lead Counsel Adequately Represented The Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[5]

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Plaintiffs diligently oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even

---

[5] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.")

greater presumption of reasonableness."). In fact, Lead Plaintiff Delton Rowe flew to New York to participate in the March 20, 2023, mediation. *See* Linkh Decl., ¶ 42.

Second, Plaintiffs retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* ECF No. 151-7 (Glancy Prongay & Murray LLP ("GPM") firm resumé). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Linkh Declaration, ¶¶ 2-10, 19-24) (detailing Lead Counsel's surviving a motion to dismiss, completing complex fact discovery, filing a class certification motion, and engaging in hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2.    The Settlement Is The Result Of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel[.]" *Wal-Mart*, 396 F.3d at 116; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F.Supp.3d 394, 409 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (involvement of a third-party mediator makes the settlement procedurally fair). Here, as set forth in detail in the Linkh Declaration (¶¶ 7-9), the Parties engaged in  a full day mediation session with Jed Melnick, Esq. on March 20, 2023, several additional informal sessions with Mr. Melnick, as well as months of additional negotiations that included an in-person settlement meeting with Spruce Power's Chief Legal Officer, and the Settlement is the result of Mr. Melnick's proposal. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial

experience mediating complex securities class actions, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### 3. The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[6] Each of these factors supports preliminary approval.

### a. Complexity, Expense And Duration Of Litigation

This Action involved alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. Plaintiffs acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages (as discussed in the sections below).

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F.Supp.3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F.Supp.3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.    Establishing Liability And Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *Id.* at 694. While Lead Counsel believes Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable, and adequate.

**Scienter:** Defendants would likely continue to argue that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F.Supp.2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect

8

of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).[7] As such, Plaintiffs would have to prove, not only that such statements were materially false, but that Defendants knew or were reckless in not knowing that the statements were false or misleading. This is a high evidentiary bar that Plaintiffs would have to overcome both at summary judgment and at trial.

**Falsity:** Defendants would argue that many of the statements alleged by Plaintiffs to be misleading were not actionably false. Statements regarding the sales pipeline and revenue projections, certification by California Air Resources Board, and MPG savings are discussed in the Linkh Declaration at ¶ 20.

**Loss Causation and Damages:** Plaintiffs would have also faced the significant risk that Defendants would argue that (i) the stock price drops for the dates at issue were not statistically significant, and (ii) some or all of the drops on those dates were due to confounding information other than Defendants' alleged fraud. For example, Defendants would likely argue that some or all of the April, 2021 drop was due, not to the alleged fraud, but to "ongoing impacts of the COVID-19 pandemic . . . including OEM delays amid microchip and other shortages." [ECF No. 72 at ¶ 206]. If Defendants were to prevail on these likely loss causation arguments, the amount of potentially recoverable damages could have been greatly diminished. Even if Plaintiffs were to overcome such arguments and prevail at trial, such a victory would not have guaranteed the Settlement Class an ultimate recovery larger than the $19.5 million Settlement.[8]

---

[7] Further, Plaintiff may have difficulty establishing motive through personal benefit, as no Individual Defendant made any significant stock sales during the Settlement Class Period.

[8] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and

**Additional Considerations:** Even if Plaintiffs' claims survived a motion for summary judgment, which was not guaranteed, there is a significant risk that they would not be able to prove their case before a jury. In this complex securities litigation relating to matters such as (i) Defendants' awareness of complex data in XL's Salesforce database, (ii) nuanced issues concerning the specifics of CARB compliance, and (iii) comparison of various methods of MPG testing, *see* Linkh Declaration at ¶ 23, there is a risk that a jury would not understand Plaintiffs' theories of the case and their intersection with economic and statistical analyses that undergird causation and damages issues. This is compounded by the fact that Plaintiffs would be forced to tell their story to the jury through incriminating documents and adverse witnesses. Conversely, Defendants would be able to obtain testimony from the Individual Defendants themselves, as well as many other witnesses who are friendly to the Individual Defendants.

### c.  Risks Of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. V.B., *infra*, the class had not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree with their arguments. Even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F.Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement. *See GSE*, 414 F.Supp.3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

---

tried in 1988 on the basis of 1994 Supreme Court opinion).

> **d.      Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F.Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed Settlement provides an all-cash payment of $19.5 million for the benefit of the Settlement Class.[9] This is an excellent result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, *Plaintiffs' best-case scenario*—the total *maximum damages potentially available* in this Action would be approximately $250 to $495 million. Thus, the $19.5 million Settlement represents a recovery of 3.9% to 7.8% of maximum potential damages. This recovery is well above the 1.8% median recovery of estimated damages in all securities class actions settled in 2022, and is also significantly higher than the 1.6%-2.4% median recovery in securities cases with similar damages that settled between December 2011-December 2022. *See* Linkh Decl., Ex. 2 (true and correct excerpts of Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at 18 (Fig. 19)); *see also id.* at 17 (Fig. 18) (median recovery for securities class actions that settled between December 2011

---

[9] After the Parties accepted the mediator's proposal to resolve this action for $19.5 million (*see* Linkh Decl.*,* ¶ 9), the Securities and Exchange Commission and XL Fleet announced an agreed civil penalty of $11 million in a parallel SEC enforcement action. *See* S.E.C. Release No. 2023-208, "SEC Charges Electric Vehicle Co. for Misleading Revenue Projections Ahead of SPAC Merger," *available at* https://www.sec.gov/news/press-release/2023-208 (last visited December 6, 2023).

and December 2022 was 2.4% for cases with estimated damages between $200-$399 million and 1.6% for those with estimated damages of $400-$599 million).

### 4.     Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, A.B. Data, the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[10]

---

[10] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 13.

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying, on behalf of themselves and additional counsel, for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Tech. Corp.*, 186 F.Supp.2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for 33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶ 16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a certain percentage of XL Fleet Securities traded during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed in ¶¶ 56-87 of the proposed Notice (Ex. A-1 to Ex. 1 of the Linkh Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement

13

Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F.Supp.2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6. The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Grinnell* also outlined several factors that are not co-extensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, also support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F.Supp.2d 259, 267 (S.D.N.Y. 2012). Here, the Settlement was entered into only after the Court denied Defendants' motion to dismiss, fact discovery had been completed, Plaintiffs' class certification motion had been filed, and there had been multiple mediations. Thus, Plaintiffs and their counsel had sufficient information to evaluate the strengths and weaknesses of the case at the time of settlement. There can be no question that this factor supports preliminary approval.

**The Ability of Defendants to Withstand a Greater Judgment:** "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re Metlife Demutualization Litig.*, 689 F.Supp.2d 297, 339 (E.D.N.Y. 2010). While Defendants have limited

14

amounts of D&O insurance available to contribute to towards a settlement of this Action, the amount was rapidly wasting as a result of an SEC investigation (which resulted in its own $11 million settlement, that was not announced until this case was settled in principle), another class action pending in the Delaware Court of Chancery, and several shareholder derivative actions. Furthermore, as to the substantial portion of the Settlement Amount not funded by Defendants' insurance, XL Fleet, both before and after it merged with Spruce Power, has incurred substantial losses every quarter and never reported a profit. If the litigation continued for several more years through trial and appeals, there is a possibility that Spruce Power would be in a more dire financial situation, and would have even less of an ability to fund the Settlement. Under these circumstances, the ability to pay weighs in favor of preliminary approval.

**B.    Certification Of The Settlement Class For Settlement Purposes Is Appropriate**

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy all the requirements of Fed. R. Civ. P. 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested[.]").

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation ¶ 3. For settlement purposes, Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation, comprising "all persons and entities that purchased or otherwise acquired the publicly traded common stock, units, and/or warrants of XL Fleet Corp. ("XL Fleet") or Pivotal Investment Corporation II ("Pivotal"), and/or purchased or otherwise

acquired publicly traded XL Fleet or Pivotal call options, and/or wrote publicly traded XL Fleet or Pivotal put options, between September 18, 2020 and March 31, 2021, both dates inclusive, and were damaged thereby." *Id.* ¶1(vv).[11] As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

### 1.    The Settlement Class Satisfies The Requirements Of Rule 23(a)[12]

**Numerosity**: Rule 23(a)(1) is satisfied when a class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when a class consists of 40 members or more. *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, 2022 WL 986071, at *3 (S.D.N.Y. Mar. 31, 2022). During the Class Period, XL Fleet common stock was actively traded on the NYSE, with an average of 77.43 million shares outstanding and an average of 67.60 million shares in XL Fleet's public float. *See* ECF No. 151-1, ¶ 94. The average weekly trading volume was approximately 52.4% of all outstanding XL Fleet stock. *Id.* ¶ 30. Thus, there are likely thousands of Class Members at the very least. The numerosity requirement is met.

---

[11] Excluded from the Settlement Class are: Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer, and/or director of XL Fleet or Pivotal during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of XL Fleet and Pivotal; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. *Id.*

[12] In addition, in order to evaluate Rule 23(a)'s requirements, the Second Circuit imposes an implied requirement that the Class is ascertainable. *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 203-04 (S.D.N.Y. 2022). Ascertainability is readily established in securities fraud cases because "securities purchases identified by subject matter, timing, and location [] are clearly objective." *Id.* at 205 (*quoting In re Petrobras Secs.*, 862 F.3d 250, 269 (2d Cir. 2017).

**Common Questions:** Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In securities class actions, this requirement has been characterized as a "low hurdle" that is met "when plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 204 (S.D.N.Y. 2022) (internal quotation marks omitted). "Even a single common legal or factual question will suffice." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009). Plaintiffs' claims readily meet this standard as the allegations in the Complaint raise numerous questions common to the Settlement Class, including whether (a) Defendants concealed material facts about XL Fleet's business, including but not limited to: XL Fleet's inflated sales pipeline, inactive customers, poor fuel economy results, inability to sell in California, and baseless revenue projections; (b) Defendants engaged in a scheme to defraud investors; (c) Defendants acted with scienter; (d) the prices of the XL Fleet's securities were artificially inflated during the Settlement Class Period as a result of Defendants' conduct; and (e) Defendants' conduct caused Class members to suffer damages. Because all Settlement Class Members' claims depend on the answers to these common questions, commonality is established.

**Typicality:** Rule 23(a)(3) is satisfied when the claims of the representative parties are "typical" of those of the class. Fed. R. Civ. P. 23(a)(3). As with commonality, the test for typicality "is not demanding." *Villella v. Chem. And Mining Co. of Chile, Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2021). Here, Plaintiffs' claims are typical of the proposed Class as they arise out of the same course of conduct, *i.e.*, that Defendants allegedly inflated the prices of XL Fleet's publicly traded securities through material misstatements and omissions concerning XL Fleet's sales pipeline, broken supply chain, inactive customers, poor fuel economy results, inability to sell in California, and baseless revenue projections. Thus, any Settlement Class Member's claim arising from these

17

misrepresentations and omissions will necessarily rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F.Supp.2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:** As explained in Sec. V.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives.[13]

### 2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625.

Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*,

---

[13] Each Plaintiff's commitment to this litigation was further demonstrated by the fact that each had their deposition taken.

838 F.3d 223 (2d Cir. 2016) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). The predominance requirement has, therefore, been satisfied. *See id.*; *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *5 (S.D.N.Y. April 6, 2006) (finding predominance requirement readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore,

19

it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3.    The Court Should Appoint Lead Counsel As Counsel For The Settlement Class

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court appointed GPM to serve as Lead Counsel in June 2021, and the firm has vigorously prosecuted the Action on behalf of Plaintiffs and the Settlement Class. As set forth in the Linkh Declaration, Lead Counsel have devoted substantial time, effort, and resources to identifying, investigating, litigating, and settling the claims in this matter. *See* ¶¶ 2-10. Moreover, as explained in Sec. V.A.1., *supra*, Lead Counsel are experienced in handling class action litigation and are highly familiar with securities class action litigation. For these reasons, among others, Plaintiffs respectfully request that the Court appoint GPM to serve as Class Counsel. *See Wilson v. LSB Indus. Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 12, 2018) (appointing GPM as class counsel).

### 4.    The Court Should Approve The Proposed Form And Method Of Notice To The Settlement Class

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F.

App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F.Supp.2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.").

Here, the proposed Notice provides detailed information concerning: (1) the rights of Settlement Class Members, including the manner in which objections can be lodged; (2) the nature, history, and progress of the litigation; (3) the proposed Settlement; (4) how to file a Claim Form; (5) a description of the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead Counsel; and (7) the necessary information to examine Court records. Stipulation, Ex. A-1.

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per security basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of

21

litigation expenses (both on an aggregate and average per security basis) that counsel will seek; and (4) provides the contact information for the Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[14] *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order, Exhibit A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard Notice by first-class mail to Settlement Class Members who can be identified with reasonable effort. Preliminary Approval Order, ¶ 7(b). Contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded. *Id*. at ¶ 7(c). Additionally, Summary Notice will be published once in INVESTOR'S BUSINESS DAILY and transmitted once over the PR NEWSWIRE. *Id*. at ¶ 7(d).

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website).

---

[14] Plaintiffs request that A.B. Data be appointed the Claims Administrator. Lead Counsel sought proposals from multiple claims administration companies for the administration of the Settlement. After reviewing responses, Lead Counsel decided to retain A.B. Data due to its substantial experience and its estimated administration costs.

22

The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstances and satisfy the requirements of due process, Rule 23, and the PSLRA. Accordingly, Plaintiffs respectfully request that the Court approve the form and method of providing notice of the Settlement to the Settlement Class.

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the following schedule for Settlement-related events. The specific timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is scheduled. This schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. In order to allow sufficient time for the Notice program, Plaintiffs request that the Court schedule the Settlement Hearing for a date not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter.

| Event | Proposed Timing |
| --- | --- |
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 29) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶ 13, 18) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 29) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 calendar days after the Notice Date |

| Event | Proposed Timing |
|---|---|
| Settlement Hearing | Not earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) preliminarily certify the Settlement Class for the purposes of settlement; (ii) preliminarily approve the Settlement as set forth in the Stipulation; (iii) approve the form and manner of notice and direct that such notice be disseminated to the Settlement Class; (iv) schedule a Settlement Hearing to consider final approval of the Settlement and related matters; and (v) establish a schedule for various deadlines in connection with the Settlement.

Dated: December 8, 2023

**GLANCY PRONGAY & MURRAY LLP**

By: _s/ Gregory B. Linkh_
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
glinkh@glancylaw.com

Robert V. Prongay
Garth Spencer (GS-7623)
Christopher Fallon (*admitted pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
gspencer@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867
hsmith@howardsmithlaw.com

*Lead Attorneys for Lead Plaintiff Delton Rowe,
additional Plaintiffs Jeffrey Suh, Carl Enslin,
Simone Heridis, and Soraya Heridis,
and the putative Class*

25

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of December 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Gregory B. Linkh*
Gregory B. Linkh
