**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE XL FLEET CORP. SECURITIES
LITIGATION

Case No. 1:21-cv-02002-JLR

**DECLARATION OF GREGORY B. LINKH IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND
(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

I, Gregory B. Linkh, declare as follows:

1.      I am a partner at Glancy Prongay & Murray LLP, Court-appointed Lead Counsel

for Lead Plaintiff Delton Rowe, and additional named plaintiffs Jeffrey Suh, Carl Enslin, Simone

Heridis and Soraya Heridis (née Matamoros) (collectively, "Plaintiffs") in the above-captioned

action (the "Action").[1]  I am admitted to practice in this District.  I have personal knowledge of

the facts stated herein and, if called upon as a witness, I could and would testify competently

thereto.

I.      **PROCEDURAL HISTORY/DISCOVERY**

2.      On March 8, 2021, plaintiff Jeffrey Suh commenced an action in this Court styled

*Suh v. XL Fleet Corp. et al.* 21-cv-2002 (S.D.N.Y.).  ECF No. 1.  On March 12, 2021 plaintiff

Sourabh Kumar commenced the related action styled *Kumar v. XL Fleet Corp. et al*, 21-cv-2171

(S.D.N.Y.).  After a contested leadership process, on June 3, 2021, Judge Schofield consolidated

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the
Stipulation and Agreement of Settlement dated December 6, 2023 (the "Stipulation").  A true and
correct copy of the Stipulation is attached hereto as Exhibit 1.

1

the two cases, and appointed Delton Rowe as Lead Plaintiff and approved his selection of Glancy Prongay & Murray LLP ("GPM") to serve as Lead Counsel.  ECF No. 60.

3.    On July 20, 2021, Plaintiffs filed their Amended Complaint.  ECF No. 72.  On August 26, 2021, Defendants moved to dismiss the Amended Complaint.  ECF No. 85.  After Plaintiffs opposed this motion (ECF No. 93), and Defendants replied (ECF No. 95), Judge Schofield denied the motion to dismiss in its entirety on February 17, 2022.  ECF No. 97; *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022).

4.    Following the denial of Defendants' Motion to Dismiss, the Parties initiated discovery.  On March 7, 2022, the Parties filed their Civil Case Management Plan and Scheduling Order (ECF No. 103), which was amended on April 22, 2022.  ECF No. 118.  As a result, discovery consisted of, among other things:

**Document Discovery:** On March 25, 2022, the Parties exchanged initial requests for production of documents. The Parties served their responses and objections to the requests for production on April 25, 2022.  Pursuant to these requests, Defendants produced approximately 975,000 pages of documents, and Plaintiffs produced 756 pages of documents.  Plaintiffs also served third-party subpoenas to the provider of XL Fleet's sales pipeline tracking software, Salesforce, Inc. (which produced 71 pages and 590 spreadsheet files); Pivotal's financial advisors in connection with the XL Fleet merger, BTIG, LLC (which produced approximately 114,981 pages); and certain affiliates of Pivotal including MGG Investment Group LP ("MGG") (which collectively produced over 81,268 pages).  Plaintiffs also served a FOIA request on the California Air Resources Board, which produced 493

pages of documents.  ECF No. 152 at 1-6 (March 21, 2023 joint status letter summarizing discovery in the case).

**Depositions:** Between December 5, 2022, and February 13, 2023, the parties conducted deposition discovery. Plaintiffs' Counsel took the depositions of 16 current or former XL Fleet, Pivotal and MGG directors or personnel, and Defendants' Counsel took the depositions of the five plaintiffs.  ECF No. 152 at 1-6.

5.      On January 13, 2023, Plaintiffs filed their pre-motion conference letter regarding class certification. ECF No. 137.  On January 23, 2023, the Court so-ordered the Parties' stipulated class certification briefing schedule.  ECF No. 138.  On March 10, 2023, Plaintiffs filed their motion for class certification and related documents.  ECF Nos. 149-151.  This motion included the expert report of Dr. Adam Werner, who performed detailed statistical analyses to demonstrate that: (a) XL Fleet stock traded in an efficient market throughout the putative class period: and (b) damages could be calculated using a common class-wide methodology. This motion was still pending when the Parties informed the Court of the Settlement.

6.      February 2, 2023, the parties filed their eighth joint status letter (ECF No. 146), wherein they requested a continuation of the expert discovery and dispositive motion schedule relating to their March 20, 2023 mediation. The Court approved the requested continuation. ECF No. 147.

7.      On March 20, 2023, Lead Counsel, Lead Plaintiff Delton Rowe, and Defendants' Counsel participated in a full-day in-person mediation session before the mediator Jed Melnick, Esq. of JAMS.  In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of both liability and

damages, and further participated in discussions concerning the Parties' estimates of damages. This mediation session failed to produce a settlement.

8.    Over the next six months, the parties continued to negotiate, including through additional discussions with Mr. Melnick. These months of additional negotiations that included an in-person settlement meeting with Spruce Power's Chief Legal Officer (following the end of the Settlement Class Period, XL Fleet changed its name to Spruce Power).

9.    On September 5, 2023, Mr. Melnick issued a mediator's proposal to settle the Action for $19.5 million. On September 7, 2023, the parties accepted this proposal.

10.    The Parties thereafter memorialized the substantive terms of the settlement in a confidential Term Sheet (the "Term Sheet") on September 29, 2023, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Stipulation was executed on December 6, 2023. Annexed to the Stipulation are the following documents:

| Exhibit | Description |
|---|---|
| A | [Proposed] Order Preliminarily Approving Settlement And Providing For Notice ("Preliminary Approval Order") |
| A-1 | Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") |
| A-2 | Proof of Claim and Release Form ("Proof of Claim") |
| A-3 | Summary Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice") |
| A-4 | Postcard Notice |
| B | Judgment Approving Class Action Settlement ("Judgment") |

## II.   INFORMATION ABOUT THE SETTLEMENT

### A.   Class Definition

11.   The Stipulation defines the Settlement Class as: "all persons and entities that purchased or otherwise acquired the publicly traded common stock, units, and/or warrants of XL Fleet or Pivotal, purchased or otherwise acquired publicly traded XL Fleet or Pivotal call options, and/or wrote publicly traded XL Fleet or Pivotal put options, between September 18, 2020 and March 31, 2021, both dates inclusive (the "Settlement Class Period"), and were damaged thereby." Stipulation at ¶ 1(vv).

12.   The Stipulation excludes from the Settlement Class: "(a) persons who suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer, and/or director of XL Fleet or Pivotal during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of XL Fleet and Pivotal; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof."  Stipulation, ¶1(vv).  Plaintiffs believe the additional exclusions are appropriate to ensure the benefits of the Settlement flow to those investors actually injured by the fraud and to avoid the risk any potential insider or wrongdoer would receive an improper benefit.

### B.   The Releases

13.   Under the terms of the proposed Settlement, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, on behalf of themselves,

and on behalf of any other person or entity legally entitled to bring Released Plaintiffs' Claim (as defined below) on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendants' Releasees (as defined below) (including, without limitation, Unknown Claims) whether or not such Settlement Class Members execute and deliver the Proof of Claim or share in the Net Settlement Fund, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims (including, without limitation, Unknown Claims) against any of the Defendants' Releasees in any court of law or equity, arbitral forum, administrative forum, or in the court of any foreign jurisdiction, whether or not such Settlement Class Members execute and deliver the Proof of Claim or share in the Net Settlement Fund.  Stipulation, ¶ 5.

14.     Released Plaintiff's Claims are defined in the Stipulation as all claims and causes of action of every nature and description, whether known claims or Unknown Claims, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, heretofore or previously existed, or may hereafter exist, arising under federal, state, common or foreign law, that Plaintiffs or any other members of the Settlement Class: (i) asserted in the Complaint; or (ii) could have asserted or could in the future assert in any federal, state, or foreign court, tribunal, forum, or proceeding that arise out of, relate to or are based upon the allegations, transactions, facts, matters or occurrences, representations, statements or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase and/or acquisition of publicly traded XL Fleet Securities during the Settlement Class Period, with the exception of

6

any claims asserted in *In re XL Fleet (Pivotal) Stockholder Litig.*, C.A. No. 2121-0808 (Del. Ch.) (the "Stockholder Litigation"). *See* Stipulation, ¶ 1(qq). Released Plaintiffs' Claims do not include Excluded Claims, which are defined as: (i) any claims relating to the enforcement of the Settlement; (ii) any derivative claims asserted in the following actions: (a) *Kay v. Frodl,* Case No. 1:22-cv-10977-NMG (D. Mass.); (b) *In re Spruce Power Holding Corp. Deriv. Litig.*, Case No. 1:23-cv-00289-MN (D. Del.); and (c) *Tucci v. XL Fleet Inc.*, Case No. 1:23-cv-00322-MN (D. Del.); (iii) any derivative claims by Sham Lakhani and Matthew Waldman, purported shareholders who have made demands upon XL Fleet, as well as purported shareholder Val Kay; (iv) any claims asserted in the Stockholder Litigation; and (v) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court." *See* Stipulation, ¶ 1(s).

15.     "Defendants' Releasees" are defined in the Stipulation as "(i) each Defendant; (ii) the Immediate Family members of the Individual Defendants; (iii) direct or indirect parent entities, subsidiaries, related entities, and affiliates of XL Fleet and Pivotal; (iv) any trust of which any Individual Defendant is the settler or which is for the benefit of any Individual Defendant and/or his or her Immediate Family members; (v) for any of the entities listed in parts (i) through (iv), their respective past and present general partners, limited partners, principals, shareholders, joint venturers, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof; and (vi) any entity in which a Defendant has a controlling interest; all in their capacities as such." Stipulation, ¶ 1(n).

16.     The Settlement also provides that upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled

to bring Released Defendants' Claims on behalf of Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees (including, without limitation, Unknown Claims), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims (including, without limitation, Unknown Claims) against any of the Plaintiffs' Releasees.  The Court shall retain exclusive jurisdiction to interpret and enforce the permanent injunction described in this paragraph.  This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.  Stipulation, ¶ 6.

17.     "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of, relate to or are based upon the institution, prosecution, or settlement of the claims asserted in the Action against Defendants.  Released Defendants' Claims shall not include: (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.  Stipulation, ¶ 1(pp).

18.     "Plaintiffs' Releasees" means (i) Plaintiffs, all Settlement Class members, any other plaintiffs in the Action and their counsel, Plaintiffs' Counsel, any other counsel for Plaintiffs in the Action, and (ii) each of their respective family members, and their respective partners, general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors,

successors, assigns, heirs, executors, administrators, and any controlling person thereof; all in their capacities as such.  Stipulation, ¶ 1(jj).

**C.      The Settlement Is Extremely Favorable Given
           The Many Risks Of Continued Litigation**

19.      If Plaintiffs had fully prevailed in their claims at the trial stage, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to the stock price drop dates alleged in this case—*i.e.*, Plaintiffs' best-case scenario, estimated total maximum aggregated damages would be approximately $250 to $495 million.  Thus, the $19.5 million Settlement represents a recovery of 3.9% to 7.8%, which falls well above the median recovery 1.8% of estimated damages in for all securities class actions settled in 2022, and is also significantly higher than the 1.6%-2.4% median recovery in securities cases with similar damages that settled between December 2011-December 2022.  *See* Ex. 2 (true and correct excerpts from Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at 18 (Fig. 19)); *see also id.* at 17 (Fig. 18) (median recovery for securities class actions that settled between December 2011 and December 2022 was 2.4% for cases with estimated damages between $200-$399 million and 1.6% for those with estimated damages of $400-$599 million).

20.      Plaintiffs' best-case scenario, however, faced substantial obstacles, including those detailed below.

21.      Defendants would argue that many of the statements alleged by Plaintiffs to be misleading were not actionably false. For example:

- **Sales Pipeline and Revenue Projections**: A key component of Plaintiffs' case centered around Defendants' inflated sales pipeline and revenue projections -- that such projections directly contradicted the information in XL's salesforce database.

Defendants would likely claim that such statements were non-actionable forward-looking statements protected by the PSLRA safe harbor (15 U.S.C. § 78u–5) and statements of opinion protected by *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S, 175, 186 (2015).

- **Certification by California Air Resources Board ("CARB")**: Defendants stated in their public filings that "XL has obtained a number of EOs for prior model years and is in the process of conducting testing against CARB issued test orders for future products to be introduced into the Californian market." While Plaintiffs would argue that Defendants materially omitted to state that since January 2019 CARB had prohibited XL from obtaining new EOs, Defendants would likely argue that their statements were true and that they reasonably believed they would soon regain CARB approval.

- **MPG savings:** Defendants repeatedly touted that XL Fleet's hybrid systems would give customers 25% to 50% MPG improvements over the corresponding non-hybrid trucks. Plaintiffs would argue that this number is misleading because it was based on testing using a "city" drive cycle only, and real-world savings were often much less substantial.  However, Defendants would likely argue that the 25-50% numbers were based on testing that in fact showed these levels of MPG savings.[2]

22.    Defendants would likely continue to argue that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities

---

[2] As to the other main categories of false statements alleged by Plaintiffs, Defendants would likely continue to assert that their statements concerning XL Fleet's supply chain were not false because they had accurately disclosed such supply chain problems. And as to Plaintiffs' allegation that customers featured in Defendants' statements were inactive, Defendants would likely argue that all of those customers had in fact previously purchased XL Fleet products.

fraud claims alleged. As such, Plaintiffs would have to prove, not only that such statements were materially false, but that Defendants knew or were reckless in not knowing that the statements were false or misleading. This is a high evidentiary bar that Plaintiffs would have to overcome both at summary judgment and at trial.

23. Plaintiffs would have also faced the significant risk that Defendants would argue that: (a) the stock price drops for the dates at issue were not statistically significant; and (b) some or all of the drops on those dates were due to confounding issues other than Defendants' alleged fraud. For instance, Defendants would likely argue that some or all of the April 1, 2021 drop was due, not to the alleged fraud, but to "ongoing impacts of the COVID-19 pandemic . . . including OEM delays amid microchip and other shortages." ECF No. 72 at ¶206. If Defendants were to prevail on these likely loss causation arguments, the amount of potentially recoverable damages would have been diminished significantly. Even if Plaintiffs were to overcome such arguments and prevail at trial, such a victory would not have guaranteed the Settlement Class an ultimate recovery larger than $19.5 million.

24. Even if Plaintiffs' claims survived a motion for summary judgment, which was not guaranteed, there is a significant risk that they would not be able to prove their case before a jury. In this complex securities litigation relating to matters such as: (a) Defendants' awareness of complex data in XL's Salesforce database; (b) nuanced issues concerning the specifics of CARB compliance; and (c) comparison of various methods of MPG testing, there is a risk that a jury would not understand Plaintiffs' theories of the case and the theories' intersection with economic and statistical analyses that undergird causation and damages issues. This is compounded by the fact that Plaintiffs would be forced to tell their story to the jury through incriminating documents and adverse witnesses. Conversely, Defendants would be able to obtain testimony from Individual

Defendants themselves, as well as many other witnesses who are friendly to the Individual Defendants.

25.    In the light of these risks, among many others, Lead Counsel believes that the recovery is an excellent result for the Class.

**D.    The Proposed Plan of Allocation of the Settlement Fund**

26.    The Plan of Allocation is detailed in the Notice, which is an exhibit to the Stipulation. *See* Stipulation, ¶1(kk); Notice, ¶¶ 56-87. The Postcard Notice will be mailed to Settlement Class Members, and will direct them to the Notice that is will be posted online at the settlement website, www.XLFleetSecuritiesSettlement.com (the "Settlement Website").

27.    Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.*, the $19.5 million Settlement Amount plus interest earned thereon) less (a) all federal, state, and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

28.    The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability asserted in the Action. More

specifically, the Plan of Allocation reflects the price changes in XL Fleet Common Stock, net of market-and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Plaintiffs.

29.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged violations of the Exchange Act as opposed to losses caused by market, industry, or company-specific factors or factors unrelated to the alleged violations of law and takes into consideration when each Claimant purchased and/or sold XL Fleet Securities.

30.    An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including which XL Fleet Securities they purchased, when and at what prices they purchased/acquired or sold their XL Fleet Securities, and the total number of valid Claim Forms submitted.  If a Claimant has an overall market gain with respect to his, her, or its overall transactions in XL Fleet Securities during the Settlement Class Period, or if the Claimant purchased XL Fleet Securities during the Settlement Class Period but did not hold any of those through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members who submit valid claims.

**E.    There Are No Reversions to the Defendants**

31.    The Settlement is not a claims-made settlement.  In other words, "[u]pon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without

limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund." *See* Stipulation, ¶ 13. Moreover, if any funds remain after an initial distribution to Authorized Claimants due to uncashed or returned checks or other reasons, subsequent distributions will be conducted if they are cost effective. *See* Notice ¶ 85. To the extent any funds remain once distributions are no longer cost effective, the Public Justice Foundation has been designated as the proposed *cy pres* recipient. The Public Justice Foundation, which is a non-sectarian, not-for-profit organization dedicated to protecting consumers, employees civil rights, and the environment, is an appropriate *cy pres* recipient given that this is a securities fraud case. *See Stein v. Eagle Bancorp, Inc. et al.*, No. 1:19-cv-06873-LGS, ECF No. 117 (S.D.N.Y. July 19, 2023) ("[a]pplying that standard [that a *cy pres* designee must 'reasonably approximate' the interests of the class] here, Public Justice is an appropriate cy pres beneficiary, as it is a non-profit organization advocating on behalf of investors and consumers pursuing claims under federal and state securities laws.").

## II.    SETTLEMENT ADMINISTRATION SELECTION PROCESS

32.    Lead Counsel retained A.B. Data, subject to Court approval, to serve as Claims Administrator. A.B. Data was selected following a competitive bidding process in which three (3) claims administration firms submitted bids. Lead Counsel carefully compared the submitted proposals and selected the lowest one.

## III.    THE NOTICE PROGRAM

### A.    The Notice Plan

33.    In accordance with the terms of the Proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator

to mail, by first-class mail, the Postcard Notice to all Settlement Class Members who can be identified through reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.

34.     Contemporaneously with the mailing of the Postcard Notice, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form on the Settlement Website, along with other documents relevant to the case.  Relevant documents will include the Amended Complaint, the Preliminary Approval Order if the Court grants preliminary approval, the Stipulation, and, upon filing, Plaintiffs' Motion for Final Approval of Class Action Settlement and Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses.

35.     Additionally, no more than ten (10) business days after the Postcard Notice is mailed, the Summary Notice will be published once in INVESTOR'S BUSINESS DAILY and transmitted once over PR NEWSWIRE.

36.     Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement.

### B.     The Contents Of The Notice Are Adequate

37.     As more fully explained in the accompanying Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Lead Counsel believes the notice program satisfies the requirements of due process, rules 23(c)(2)(B) and 23(e) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(7).

38.     All blanks in the Postcard Notice, Notice, Claim Form, and Summary Notice will be filled in once the Court sets those dates and these documents are finalized prior to mailing and publication.

## IV.     OBJECTIONS AND EXCLUSIONS

39.     The notice program instructs potential Settlement Class Members how to object to the Settlement, the proposed Plan of Allocation, and/or Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. *See* Notice, ¶¶ 93-101; Summary Notice, p. 2.

40.     Similarly, the notice program instructs investors how to exclude themselves from the Settlement. Notice, ¶¶ 89-92, Summary Notice, p. 2.

## V.     ATTORNEYS' FEES AND LITIGATION EXPENSES

41.     For their efforts on behalf of the Settlement Class, Lead Counsel will be applying on behalf of all Plaintiffs' Counsel for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class.[3]  Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the $19.5 million Settlement Fund (or $6.5 million, plus interest earned at the same rate as the Settlement Fund).

42.     Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $726,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff and the four additional Plaintiffs directly related to their representation of the Settlement Class, discussed below. Lead Counsel's out-of-

---

[3] Lead Counsel intends to share a portion of any attorneys' fees awarded by the Court with The Law Offices of Howard J. Smith, 3070 Bristol Pike, Suite 112, Bensalem PA 19020, in accordance with its level of contribution to the initiation, prosecution, and resolution of the Action.

pocket expenses were incurred in connection with the institution, prosecution, and resolution of the claims against the Defendants. They will be detailed in Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expense. As part of this request, Lead Counsel will also seek reimbursement for Lead Plaintiff and the four class representative plaintiffs, pursuant to the PSLRA (15 U.S.C. §78u-4(a)(4)), for their time spent representing the Settlement Class in an amount not to exceed, in the aggregate, $105,000 .

43.     Each of the Plaintiffs were highly involved in the litigation and communicated regularly with Lead Counsel. Each made themselves freely available to perform their representative functions, including often speaking and emailing with Lead Counsel. The tasks performed by them in executing their duties and responsibilities as Plaintiffs in this Action include, among others: (i) reviewing the Complaint and other significant documents in the case; (ii) communicating with Lead Counsel via email and telephone about case developments and litigation strategy; (iii) providing documents and responses to Defendants' discovery requests; (iv) preparing and sitting for deposition; (v) preparing for the mediation session, including discussing with Lead Counsel the Parties' mediation statements, as well as mediation strategy; (vi) considering the mediator's recommendation, conferring with counsel, and ultimately approving the Settlement; and (vii) communicating with Counsel regarding the process of finalizing the Settlement. In addition,  Lead Plaintiff Delton Rowe (i) traveled to New York to attend the first mediation session on March 20, 2023, and (ii) engaged in extensive discussions of damages and mediation strategy with Lead Counsel in preparation for mediation.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed this 8th day of December 2023, in Brooklyn, New York.

/s/ Gregory B. Linkh
Gregory B. Linkh

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Gregory B. Linkh*
Gregory B. Linkh

1