**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE XL FLEET CORP. SECURITIES LITIGATION | Case No. 1:21-cv-02002-JLR |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     INTRODUCTION ......................................................................................................... 1

III.    ARGUMENT ................................................................................................................. 4

        A.      Lead Counsel Is Entitled To An Award Of Attorneys' Fees And Expenses From The
                Common Fund ................................................................................................................. 4

        B.      The Court Should Award A Reasonable Percentage Of The Common Fund ......... 5

        C.      The Requested Attorneys' Fees Are Reasonable ..................................................... 6

                1.      The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-
                        Fund Method ............................................................................................... 6

                2.      The Lodestar "Cross-Check" Strongly Supports The Reasonableness Of The
                        Requested Fee ............................................................................................. 8

        D.      Factors Considered By Courts In The Second Circuit Confirm That The Requested Fee
                Is Fair And Reasonable ...................................................................................... 10

                1.      Time And Labor Expended Support The Requested Fee .......................... 11

                2.      The Risks Of Litigation Support The Requested Fee .............................. 12

                3.      The Magnitude And Complexity Of The Action Support The Fee .......... 19

                4.      The Quality Of Representation Supports The Requested Fee .................. 20

                5.      The Requested Fee In Relation To The Settlement Amount .................... 22

                6.      Public Policy Considerations Support The Requested Fee ...................... 22

        E.      Lead Counsel's Expenses Should Be Reimbursed ............................................... 23

        F.      Plaintiffs Should Be Granted PSLRA Awards .................................................... 24

IV.     CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) .......................................................................................... 2

*Anwar v. Fairfield Greenwich Ltd.*,
2012 WL 1981505 (S.D.N.Y. June 1, 2012) ................................................................... 8

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ............................................................................................. 17

*Asare v. Change Group of New York, Inc.*,
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013).............................................................. 10

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)........................................................... 5, 10

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ................................................................. 4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)................................................................... 6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).......................................................................................................... 4

*Burns v. Falconstor Software, Inc.*,
2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) .............................................................. 9

*City of Birmingham Ret. and Relief Sys. v. Credit Suisse Grp. AG*,
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) .............................................................. 23

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................... 13

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................. 20

*Cornwell v. Credit Suisse Grp.*,
2011 WL 13263367 (S.D.N.Y. July 18, 2011) ............................................................. 10

*Dartell v. Tibet Pharma., Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017) ................................................................... 16

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................... 6, 10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................. 17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................................... 2

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................... passim

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021) ................................................................................................. 16

*Gross v. GFI Group, Inc.*,
784 F. App'x. 27 (2d Cir. Sept. 13 2019) ........................................................... 14, 15

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................ 10, 16, 24

*Hefler v. Wells Fargo & Company*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................................... 18

*Hicks v. Morgan Stanley*,
*& Co.*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................. 4, 6

*In re American Intern. Group, Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ..................................................................................... 17

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ......................................................... 14, 19

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................... 2

*In re Bank of Am. Corp, Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014) ..................................................................................... 25

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................... 18

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 18

*In re Bisys Sec. Litig.*,
　2007 WL 2049726 (S.D.N.Y July 16, 2007) ................................................................. 9

*In re BP p.l.c. Sec. Litig.*,
　852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................. 14

*In re Bristol-Myers Squibb Sec. Litig.*,
　361 F. Supp. 2d 229 (S.D.N.Y. 2005).................................................................... 6

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001)................................................................................ 18

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
　2022 WL 3220783 (S.D.N.Y Aug. 5, 2022).......................................................... 7

*In re Colgate-Palmolive Co. ERISA Litig.*,
　36 F. Supp. 3d 344 (S.D.N.Y. 2014).................................................................... 10

*In re Comverse Tech., Inc. Sec. Litig.*,
　2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................... 9, 13, 22

*In re Deutsche Bank AG Sec. Litig.*,
　2020 WL 3162980 (S.D.N.Y. June 11, 2020) ....................................................... 7

*In re Deutsche Telekom AG Sec. Litig.*,
　2005 WL 7984326 (S.D.N.Y. June 14, 2005) ..................................................... 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
　2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................ 6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.,*,
　2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)..................................................... 7, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
　574 F.3d 29 (2d Cir. 2009).................................................................................. 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
　2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................... 13, 14, 23, 25

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
　279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................ 13

*In re Global Crossing Sec. & ERISA Litig.*,
　225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 9, 13, 23

iv

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................... 8

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................. 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) .................................................................... 23

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................ 10

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....................................................... 7

*In re Lottery.com, Inc. Sec. Litig.*,
  2024 WL 454298 (S.D.N.Y. Feb. 6, 2024) .............................................................. 2

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 25

*In re Ocean Power Tech., Inc., Sec. Litig.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) .............................................................. 2

*In re Perrigo Co. PLC Sec. Litig.*,
  2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) ............................................................ 8

*In re Prandin Direct Purchaser Antitrust Litig.*,
  2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ..................................................... 19

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) .......................................................... 25

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ............................................................ 7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .................................................................................... 6

*In re Signet Jewelers Limited Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) ........................................................ 17

*In re Signet Jewelers Limited Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................... 22, 23

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................... 13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 3

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................ 4, 14, 21, 25

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................... 17

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................. 6

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................... 25

*In re XL Fleet Corp. Sec. Litig.*,
    2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ...................................................... 15

*Johnson v. Brennan*,
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................................... 6

*Jorling v. Anthem, Inc.*,
    836 F. Supp. 2d 821 (S.D. Ind. 2011) ............................................................... 14

*Kelwin Inkwel, LLC v. PNC Merchant Services Company, L.P.*,
    2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) ................................................. 7, 9

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ......................................................... 19

*Lea v. Tal Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................................ 9, 19

*Leach v. NBC Universal Media, LLC*,
    2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ................................................. 10

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ............................................................................... 8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................... 5, 7, 9, 22

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................................... 21

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ...................................................................................................................... 5

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ...................................................................................................................... 8

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
  2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................................................................ 8

*Monzon v. 103W77 Partners, LLC*,
  2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ................................................................................. 5

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) .................................................................................................................... 17

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ....................................................................................................... 24

*Nichols v. Noom, Inc.*,
  2022 WL 2705354 (S.D.N.Y. July 12, 2022) ............................................................................. 7

*P. Van Hove BVBA v. Universal Travel Group, Inc.*,
  2017 WL 2734714 (D.N.J. June 26, 2017) ................................................................................ 16

*Padilla v. Community Health Systems, Inc.*,
  2023 WL 7018392 (M.D. Tenn. Oct. 20, 2023) ......................................................................... 9

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) (reversing ................................................................................. 2

*Savoie v. Merchants Bank*,
  166 F.3d 456 (2d Cir. 1999) ........................................................................................................ 9

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................................................... 19, 22

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................................... 13

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) ....................................................................................................... 2

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................................... 21

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................ 22

*Toure v. Amerigroup Corp.*,
  2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ............................................................ 7

*Varljen v. H.J. Meyers & Co., Inc.*,
  2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ......................................................... 24

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
  775 F. App'x. 51 (3d Cir. 2019) ............................................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................... 5, 6, 9, 23

*Wilson v. LSB Industries, Inc.*,
  2019 WL 3542844 (S.D.N.Y. June 28, 2019) ......................................................... 7

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ...................................................... 10

*Yedlowski v. Roka Bioscience, Inc.*,
  2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........................................................... 16

## STATUTES

15 U.S.C. § 78u-4(a)(4) .............................................................................................. 2, 24
15 U.S.C. § 78u-4(a)(6) .................................................................................................... 6
15 U.S.C. § 78u–5(c)(1)(A)(i) ....................................................................................... 15
15 U.S.C. §§ 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B) ........................................................ 2

## I.     PRELIMINARY STATEMENT

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), respectfully submits this memorandum of law in support of its Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## II.    INTRODUCTION[2]

Lead Counsel has succeeded in obtaining a $19,500,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action"). This is an extremely favorable outcome in the face of substantial risks, and it is the result of Lead Counsel's vigorous, persistent, and skilled efforts.  Lead Counsel now respectfully moves this Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $6,500,000, plus interest at the same rate as the Settlement Fund), and reimbursement of $597,900.92 in Litigation Expenses.  The Litigation Expenses consist of $512,900.92 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and an aggregate of $85,000 to Court-appointed Lead Plaintiff Delton Rowe ($25,000), and additional named plaintiffs Jeffrey Suh, Carl Enslin, Simone Heridis, and Soraya Heridis (née Matamoros) ($15,000 each) (together with Lead Plaintiff, "Plaintiffs") for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the

---

[1] Unless otherwise defined, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated December 6, 2023 (the "Stipulation," ECF No. 182-1), or the concurrently-filed Declaration of Gregory B. Linkh in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Linkh Declaration").  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Linkh Declaration.  Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[2] The Linkh Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*, the Action's history; nature of the claims asserted; negotiations leading to the Settlement; risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the benefit of the Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check.

Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. *See* 15 U.S.C. §§ 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B). These are not idle risks. "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation). As a result, a significant number of cases are dismissed at the pleading stage.[3]

Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is far from guaranteed.[4] There was, therefore, a significant possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) ("The risk of

---

[3] *See* Ex. 8 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ("NERA Report") at p. 15-16 (Fig. 14) (finding motion to dismissed filed in 96% of securities class action lawsuits, with a decision reached in 73% of the cases, and stating that "[a]mong the cases where a decision was reached, 60% were granted (with or without prejudice) while 40% were denied either in part or in full"); *see also In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at *37 (S.D.N.Y. Feb. 6, 2024) (Rochon, J.) (dismissing securities class action complaint with leave to amend where GPM is lead counsel).

[4] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds, and remanding for new trial on these issues), *reh'g denied* (July 1, 2015); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).

non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite facing long odds, Lead Counsel vigorously pursued this case for more than three years—working 5,712.60 hours and advancing $512,900.92 in out-of-pocket expenses, all on a fully contingent basis. *See* ¶¶75, 81, 90; *see also* § III.D.1., *infra* (summarizing work performed by Lead Counsel). As compensation for Lead Counsel's considerable efforts on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the amount of 33⅓% of the Settlement Fund. The requested fee is consistent with fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Lead Counsel's lodestar. Indeed, the requested fee represents a multiplier of 1.4 on Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

Lead Counsel also seeks reimbursement of $512,900.92 in out-of-pocket litigation expenses incurred in prosecuting the Action. *See* ¶¶89-90. This amount is below the $726,000 limit on Litigation Expenses disclosed in the Notice—which, by definition, included PSLRA awards to Plaintiffs. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Lead Counsel respectfully requests PSLRA awards in the aggregate amount of $85,000 to compensate Plaintiffs for the time and effort they have expended on behalf of the Settlement Class. Each Plaintiff, *inter alia*, reviewed the pleadings and briefs filed in the Action, as well as significant court orders; regularly communicated with Lead Counsel about the litigation and the strengths and weaknesses of the case; responded to discovery and sat for deposition; were involved in settlement

3

negotiations; and, after extensive discussions with Lead Counsel, authorized settlement of the case. Exs. 3, ¶¶3-5, 13; 4, ¶¶3-5, 13; 5, ¶¶3-5, 13; 6, ¶¶3-5, 13; 7, ¶¶3-5, 7. But for their "commitment to pursuing these claims, the successful recovery for the Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at \*6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Linkh Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees of 33⅓% of the Settlement Fund, approve reimbursement of $512,900.92 in out-of-pocket litigation expenses, and grant PSLRA awards in the aggregate amount of $85,000.

## III.    ARGUMENT

### A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees And Expenses From The Common Fund

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*2 (S.D.N.Y. Nov. 7, 2007). Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Veeco*, 2007 WL 4115808, at \*2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award

4

of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). These elements are all present here. Lead Counsel's efforts conferred a substantial benefit—$19.5 million in cash—on an ascertainable class. And a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the Settlement, *i.e.*, the Settlement Class. Accordingly, the Court should award attorneys' fees from the Settlement Fund. *See Maley*, 186 F.Supp.2d 369.

## B.    The Court Should Award A Reasonable Percentage Of The Common Fund

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees[.]" *Goldberger*, 209 F.3d at 50. However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]").[5] The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.

---

[5] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

15 U.S.C. § 78u-4(a)(6).[6]

Use of the percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[,]" (*id.*), or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

## C.    The Requested Attorneys' Fees Are Reasonable

### 1.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-Fund Method

The 33⅓% fee requested by Lead Counsel is well within the range of percentage fees awarded

---

[6] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

in the Second Circuit in comparable complex class actions. *See  Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) (awarding one-third of $56 million cash settlement fund and stating that "[a] fee equal to one-third of a settlement fund is routinely approved in this Circuit."); *Maley*, 186 F. Supp. 2d at 370 (finding 33⅓% fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *Kelwin Inkwel, LLC v. PNC Merchant Services Company, L.P.*, 2022 WL 3127633, at *4 (E.D.N.Y. Apr. 12, 2022) (awarding one-third of $10 million recovery, "which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit."); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one-third of $4,450,000 settlement fund and noting that a "request for one-third of the fund is reasonable and consistent with the norms of class litigation in this circuit."); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193857, at **5-6 (E.D.N.Y. Oct. 7, 2020) (one-third fee on $51.25 million settlement); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 WL 6971424, at *9, *11-*12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million); *In re NYSE Specialists Sec. Litig.*, No. 03-cv-8264, ECF No. 38, slip op. at ¶ 19 (S.D.N.Y. June 10, 2013) (awarding approximately 41% of $18.5 million settlement) (Ex. 10); *Wilson v. LSB Industries, Inc.*, 2019 WL 3542844, at *1 (S.D.N.Y. June 28, 2019) (awarding 33⅓% of $18.45 million settlement); *In re Cnova N.V. Sec. Litig.*, No. 1:16-cv-00444-LTS-OTW (S.D.N.Y. Mar. 20, 2018), ECF No. 148 at 5 (awarding 33.3% of $28.5 million settlement) (Ex. 11);  *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980 at *1 (S.D.N.Y. June 11, 2020) (awarding 33⅓% of $18.5 million settlement);  *In re Chicago Bridge & Iron Co. N.V.*

*Sec. Litig.*, 2022 WL 3220783, at \*1 (S.D.N.Y Aug. 5, 2022) (awarding 33⅓% of $44 million settlement); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, No. 18-cv-00299, ECF No. 230 at 2 (S.D.N.Y. Feb. 14, 2022) (Ex. 13) (awarding $6 million, plus interest, of $18 million settlement fund); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at \*1 (S.D.N.Y. Feb. 18, 2022) (awarding 33⅓% of the $31.9 million settlement fund).[7]

The requested one-third fee is, therefore, consistent with awards in other similarly complex cases. *See Levine* v. *Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding 33⅓% and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 12); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at \*3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations").

### 2.  The Lodestar "Cross-Check" Strongly Supports The Reasonableness Of The Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[8] Additionally, "[u]nder the lodestar method of fee

---

[7] *See also* Ex. 15 (collecting cases); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at \*5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.").

[8] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]").

computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 5,712.60 hours to the prosecution of this Action, resulting in a lodestar of $4,653,940. ¶75.[9] Based on a 33⅓% fee (equal to $6,500,000), Lead Counsel's lodestar yields a multiplier of 1.4. ¶78. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Kelwin Inkwel*, 2022 WL 3127633, at *5 (collecting cases and awarding one-third of $10 million, stating that a 2.54 multiplier "is within the range of multipliers approved during lodestar cross checks of percentage-of-fund awards."); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country[]"); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the

---

[9] Lead Counsel's rates range from $925 to $1,195 for partners, and $425 to $795 for non-partners (¶¶75-76), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's **2021** rates of $600 to $995 for partners, and $500 to $750 for associates); *see also* Ex. 9 (chart of rates charged by peer plaintiff and defense counsel in complex litigation); *Padilla v. Community Health Systems, Inc.*, 2023 WL 7018392, at *2 (M.D. Tenn. Oct. 20, 2023) (accepting GPM's 2023 rates as part of lodestar cross-check).

parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases).[10]

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017). Indeed, among other things, Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward because Lead Counsel will not seek any additional compensation for this work.

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D.    Factors Considered By Courts In The Second Circuit Confirm That The Requested Fee Is Fair And Reasonable

The Second Circuit set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

---

[10] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times . . . have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier).

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1. Time And Labor Expended Support The Requested Fee

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement supports the requested fee. As set forth in greater detail in the Linkh Declaration, Lead Counsel, among other things:

- filed an initial complaint, which was based on, among other things, review and analysis of (a) filings with the U.S. Securities and Exchange Commission ("SEC") by both XL Fleet Corp. ("XL Fleet") and Pivotal Investment Corporation II ("Pivotal"); (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning XL Fleet and Pivotal; (c) investor call transcripts by the management of XL Fleet and/or Pivotal; and (d) press releases published by and regarding XL Fleet and Pivotal;

- filed a contested motion for appointment of Lead Plaintiff and Lead Counsel pursuant to the PSLRA;

- conducted further investigation of the claims asserted in the Action, resulting in a 143-page (454-paragraph) Amended Complaint, which included, among other things: (a) evidence from four confidential witnesses garnered through the use of a private investigator; (b) allegations against additional defendants; (c) an expanded class period; (d) the addition of the three named plaintiffs as well as Lead Plaintiff Delton Rowe; (e) additional false statements; (f) new theories concerning the falsity behind Defendants' statements; and (g) an added count for "scheme" liability under Rule 10b-5(a) and (c);

- researched, drafted, and filed an opposition to Defendants' motion to dismiss the Amended Complaint, after which the Court denied Defendants' motion in its entirety;

- engaged in substantial discovery, which entailed, *inter alia*: (a) exchanging initial disclosures; (b) negotiating a protective order and ESI protocol, both of which were subsequently entered by the Court; (c) serving and responding to document requests, interrogatories, and requests for admission; (d) identifying and issuing subpoenas to relevant third parties; (e) deposing 16 current or former XL Fleet, Pivotal and MGG Investment Group LP ("MGG") directors or personnel, including the Individual Defendants; (f) defending the depositions of Lead Plaintiff and the four other named plaintiffs; and (g) conducting a targeted review and analysis of over one million pages of documents produced by Defendants and third parties;

11

- engaged in a full-day, in-person mediation session overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved an exchange of written submissions concerning the facts of the case, liability and damages, and did not result in a settlement agreement at that time;

- filed a motion for class certification, which included, *inter alia*, an expert report by Dr. Adam Werner on the efficiency of the market for XL Fleet Securities;

- engaged in months of follow-up negotiations with Mr. Melnick and Defendants' Counsel following the initial mediation session, that ultimately resulted in a mediator's recommendation to the settle the Action for $19.5 million;

- worked with a consulting damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- prepared the initial draft, and negotiated the terms, of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- drafted the preliminary approval motion and supporting papers;

- prepared for and attended the preliminary approval hearing;

- worked with the Court appointed Claims Administrator to provide notice to the Settlement Class; and

- drafted the final approval motion and supporting papers. *See* ¶8, 12-38.

And, as noted above, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proof of Claim forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a distribution motion. No additional compensation will be sought for this work. Accordingly, this factor supports the requested fee. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

### 2.    The Risks Of Litigation Support The Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a

reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55).

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).[11] This case was no exception. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation, with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [many] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for

---

[11] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began more than [three] years ago." *Flag Telecom*, 2010 WL 4537550, at \*27. Lead Counsel's commitment was substantial (*i.e.*, $4,653,954 in lodestar (¶75) and $512,900.92 in out-of-pocket hard costs (¶90)), and absent a recovery, it would have all been lost. *See Gross v. GFI Group, Inc.*, 784 F. App'x. 27, 28 (2d Cir. Sept. 13 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where GPM served as one of the lead plaintiff's counsel); *Veeco*, 2007 WL 4115808, at \*6 ("There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise."); *see also* ¶49.

The risks in this case were particularly acute. Although Lead Counsel believed that the allegations of the Amended Complaint would ultimately translate into a strong case, it was also keenly aware that Lead Plaintiffs faced numerous hurdles to ***pleading*** and ***proving*** liability and damages. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). For instance, there existed a very real risk that the Court would dismiss the Amended Complaint pursuant to the stringent pleading standards of the PSLRA, and that the PSLRA's automatic stay of discovery would prevent Plaintiffs from obtaining the evidence needed to successfully replead their claims. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process.").[12] Accordingly, from its inception, there was a significant chance that this case would not progress past the pleading stage. *See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820

---

[12] *See also supra* n.3 and Ex. 8 (securities class action dismissal statistics).

(S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Moreover, the risks did not end with a positive decision on the motion to dismiss. While Plaintiffs had asserted five categories of alleged misstatements and omissions, Judge Schofield *addressed only one* in her decision denying the motion to dismiss, and explicitly declined to address Plaintiffs' allegations regarding the four other topics. *See In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *3 (S.D.N.Y. Feb. 17, 2022) ("At least one of these categories -- statements about XL Fleet's sales pipeline and revenue projections -- is sufficiently alleged and warrants denial of the motion to dismiss. That category, but not the others, is discussed below."). Thus, considerable uncertainty remained as to whether Plaintiffs could prevail on (at least) four-fifths of their case at summary judgment and trial.

Nor were the sales pipeline and revenue projection allegations that Judge Schofield did address immune from further challenge. Leaving aside evidence-based arguments (on which Plaintiffs would bear the burden of proof), Plaintiffs believed Defendants were going to assert that—as a matter of law—these alleged misstatements were non-actionable forward-looking statements protected by the PSLRA safe harbor (15 U.S.C. § 78u–5(c)(1)(A)(i)). Resolution of this issue was an open question given that Judge Schofield did not address the application of the PSLRA safe harbor to these claims in the motion to dismiss decision. *See XL Fleet Corp.*, 2022 WL 493629, at *6 & n.1. Accordingly, there was a significant risk to pleading and proving falsity. *See Gross*, 784 F. App'x. at 28 (affirming grant of summary judgment against plaintiffs in securities fraud class action on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite Judge Pauley twice finding the statement actionable); *see also* ¶¶43-45 and Final Approval Motion § III.B.3.b. (discussing other liability-related

risks).

Defendants were also prepared to contest class certification, and had they done so, they would likely have argued, among other things, that the market for XL Fleet Securities was inefficient and that damages could not be proven on a class-wide basis. While Plaintiffs had proffered expert testimony on both issues in conjunction with their class certification motion (*see* ECF No. 151-1), "Defendants would . . . most likely rely on an expert who would reach the opposite conclusion." *P. Van Hove BVBA v. Universal Travel Group, Inc.*, 2017 WL 2734714, at *8 (D.N.J. June 26, 2017). Not only did this potential "battle of the experts" insert more risk into the case, but Defendants' refusal to stipulate to class certification increased the time and money Lead Counsel was required to commit to the Action. *See Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *16 (D.N.J. Nov. 10, 2016) ("Defendants' expert would conclude that damages could not be established on a class-wide basis, resulting in a battle of the experts at class certification and trial that Plaintiff might lose."); *see also Dartell v. Tibet Pharma., Inc.*, 2017 WL 2815073, at *4 (D.N.J. June 29, 2017) (noting that "experts are expensive"). Defendants also could have petitioned the Second Circuit for review of an adverse decision under Rule 23(f), which would have further increased Plaintiffs' costs (both in terms of time and money) and extended the duration of the litigation—even if Plaintiffs prevailed. *See, e.g., Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x. 51, 52 (3d Cir. 2019) (affirming district court decision certifying the class fifteen months after initial decision).

Furthermore, there is always the risk that the law relating to class certification might change in a negative manner after the case is filed—a risk that materialized during the pendency of this case. *See Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021) (directing courts to consider "all evidence relevant to price impact" at the class certification stage); *see also Guevoura*, 2019 WL 6889901, at *9 ("Given the recent changes in the law governing Federal Rule 23 and the

16

PSLRA, the risk always exists that a change in the law could occur that would result in decertification of the Class.").[13]

While Plaintiffs believe they had strong arguments supporting class certification (*see* ECF Nos. 149-151), there was simply no guarantee that the Court would certify the class, or that certification would not be reversed at some later point.  Lead Counsel assumed these risks, and a loss after many years of litigation is not unprecedented.  *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) (de-certifying the class and effectively ending the case—after approximately 13 years of litigation—based on 2021 Supreme Court decision allowing courts to consider certain price impact arguments at the class certification stage); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years).

Even if Plaintiffs prevailed on liability, and certified the putative class, there still existed major obstacles to **proving** loss causation and damages.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss.").  Defendants would argue, *inter alia*, that: (i) the stock price drops for the dates at issue were not statistically significant; and (ii) some or all of the drops on those dates were due to confounding information other than Defendants' alleged fraud.  *See In re Signet Jewelers Limited Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019) ("plaintiffs ultimately will need to disaggregate confounding factors to prove economic loss").  For

---

[13] Questions about price impact are not ordinarily considered in the context of settlement. *In re American Intern. Group, Inc. Sec. Litig.*, 689 F.3d 229, 232 (2d Cir. 2012).

example, Defendants would likely argue that some or all of the April 1, 2021 drop was due, not to the alleged fraud, but to the "ongoing impacts of the COVID-19 pandemic . . . including OEM delays amid microchip and other shortages." ECF No. 72 at ¶206. Plaintiffs also expected Defendants to assert that the Muddy Waters Report contained numerous statements about XL Fleet that were unrelated to Plaintiffs' allegations, and Plaintiffs would then be required to disaggregate the corrective disclosures from purportedly non-relevant information. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009).

Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, each of these issues created additional risk because the trier of fact would have had to decide them based on expert testimony. *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Had any of Defendants' arguments concerning loss causation or damages been accepted in whole or in part, it could have eliminated or greatly reduced any potential recovery. A victory—much less one that exceeded $19,500,000—was far from assured. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based on plaintiffs' expert's failure to disaggregate certain negative information), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

In sum, there can be no question that, from the outset, this Action was difficult, complex, and fraught with risk. *See Hefler v. Wells Fargo & Company*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent

uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA.”); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*32 (N.D. Tex. Nov. 8, 2005) (“the risk of no recovery in complex [securities] cases of this type is very real.”).  Lead Counsel nevertheless obtained an excellent result for the Settlement Class.  Success in the face of these obstacles—among many others—strongly supports the requested fee.  *See In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at \*4 (E.D. Mich. Jan. 20, 2015) (awarding one-third of $19 million settlement fund in antitrust class action where, *inter alia*, “Class Counsel bore significant risks.  In particular, Plaintiffs here faced substantial obstacles in attempting to establish antitrust liability, causation, and damages.”).

### 3. The Magnitude And Complexity Of The Action Support The Fee

Courts have repeatedly recognized the “notorious complexity” of securities class action litigation.  *In re AOL Time Warner, Inc. Sec. & “ERISA” Litig.*, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006); *Lea,* 2021 WL 5578665, at \*9 (“Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate.”); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at \*8 (D.N.J. Dec. 4, 2009) (“securities class actions are inherently complex”).  Moreover, “securities actions have become more difficult from a plaintiff’s perspective in the wake of the PSLRA,” and other changes in the law.  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at \*9 (“[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.”).  This case was no exception.

The Action involved five categories of alleged misstatements and omissions involving, *inter alia*, revenue projections, supply chain issues, and CARB certification status; the unique aspects of investment though a SPAC; a merger; nine (9) different securities issued by two different companies; seven defendants (including three different CEOs); five representative plaintiffs; a short-seller report;

19

and three different allegedly corrective disclosures. Moreover, as noted above and in the Linkh Declaration, this case raised many complex questions concerning liability, class certification, loss causation and damages. *See* ¶¶40-48. To build the case, Lead Counsel had to, among other things: (a) dedicate a substantial amount of time to understanding these complex matters; (b) conduct an extensive factual investigation, which included working with a private investigator to locate and interviews numerous former XL Fleet employees, consulting with a loss causation and damages expert, and engaging in a broad review of all publicly available information; (c) prepare the 143-page (454-paragraph) Amended Complaint with sufficient detail to overcome the heightened pleading standard of the PSLRA; (d) brief a motion to dismiss involving complex factual and legal arguments; (e) engage in substantial offensive and defensive discovery; (f) work with an expert to submit a market efficiency report supporting Plaintiffs' motion for class certification; and (g) prepare a written mediation statement, engage with a well-respected and inquisitive mediator concerning Plaintiffs' theories of liability, loss causation and damages, and participate in months of further negotiations with Defendants. The fact that the Parties took twenty-one depositions, and over one-million pages of documents were produced by Defendants and third parties, speaks to the breadth and complexity of the case.

The magnitude of this Action was similarly unquestionable. This was hard-fought, expensive, multi-year litigation, with millions of dollars of damages at stake, and it required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality Of Representation Supports The Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*,

20

2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *see also Veeco*, 2007 WL 4115808, at *7.  Both factors support the conclusion that a 33⅓% fee award in this case is reasonable under the circumstances.

The Settlement provides a cash payment of $19,500,000 for the benefit of the Settlement Class. This is an outstanding result considering the significant risks of continued litigation.  Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, **Plaintiffs' best-case scenario**—the total **maximum damages potentially available** in this Action would be approximately $250 to $495 million.  Thus, the $19.5 million Settlement represents a recovery of 3.9% ($19.5/$495 million) to 7.8% ($19.5/$250 million) of maximum potential damages.  This recovery is approximately **two and a half times higher** than the median recovery in securities cases with similar damages that settled between January 2014-December 2023.[14]

Moreover, Lead Counsel's significant experience in prosecuting securities class action claims, vigorous representation, and commitment to providing the Settlement Class with the best possible representation were major factors in obtaining the exceptional result.  *See* Ex. 2 (GPM firm résumé); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019 (GPM lawyers "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims by expending significant time and effort on the case.").  Indeed, "[n]ot only did [Lead] Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case."  *Veeco*, 2007 WL 4115808, at *7.

"Courts have [also] recognized that the quality of the opposition should also be taken into

---

[14] *See* Ex. 8 (NERA Report at 25 (Fig. 21) (median recovery for securities class actions that settled between January 2014 and December 2023 was 2.7% for cases with estimated damages between $200-$399 million and 1.6% for those with estimated damages of $400-$599 million).

consideration in assessing the quality of the counsel's performance." *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020). Here, Defendants were represented by Troutman Pepper Hamilton Sanders LLP, Wilmer Cutler Pickering Hale and Dorr LLP, Willkie Farr & Gallagher LLP, McDermott Will & Emery LLP and Ropes & Gray LLP, all of which are experienced, aggressive, and highly skilled counsel. ¶86. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz*, 2005 WL 3148350, at *30.

### 5. The Requested Fee In Relation To The Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III.C.1., *supra*, the requested 33⅓% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6. Public Policy Considerations Support The Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Del Global*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. Indeed, the Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts

22

should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

Here, Lead Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, ***and it did so on a fully contingent basis***. Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. *See City of Birmingham Ret. and Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *2 (S.D.N.Y. Dec. 17, 2020) ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (quoting *Wal-Mart*, 396 F.3d at 96) (alteration in the original).

**E.      Lead Counsel's Expenses Should Be Reimbursed**

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Flag Telecom*, 2010 WL 4537550, at *30; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

Here, Lead Counsel incurred at total of $512,900.92 in out-of-pocket litigation expenses. ¶90. The expenses, and a categorization thereof, are attested to in the Linkh Declaration. *Id*. These expenses include, among others: (a) expert fees; (b) deposition costs; (c) on-line legal and factual research; (d) document management and hosting; (e) mediation fees; (f) travel costs; and (g) private investigator charges. ¶90. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. *See Signet Jewelers*, 2020 WL 4196468, at *22. As such, they should be reimbursed. *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type

23

for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund.").

### F.    Plaintiffs Should Be Granted PSLRA Awards

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also respectfully requests PSLRA awards to Plaintiffs in the aggregate amount of $85,000 ($25,000 to Lead Plaintiff and $15,000 to each of the other four named Plaintiffs) for time spent prosecuting the Action. 15 U.S.C. § 78u-4(a)(4).  "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura*, 2019 WL 6889901, at *22.  Reimbursement of such costs are allowed because they "encourage[] participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).[15]

Here, each Plaintiff, *inter alia*, reviewed the pleadings and briefs filed in the Action, as well as court orders; regularly communicated with Lead Counsel about the litigation and the strengths and weaknesses of the case; responded to discovery and sat for deposition; were involved in settlement negotiations; and, after extensive discussions with Lead Counsel, authorized settlement of the case. Exs. 3, ¶¶3-5, 13; 4, ¶¶3-5, 13; 5, ¶¶3-5, 13; 6, ¶¶3-5, 13; 7, ¶¶3-5, 7.  Additionally, Lead Plaintiff Delton Rowe traveled from Nebraska to New York to attend the first mediation session on March 20, 2023, and engaged in extensive discussions of damages and mediation strategy with Lead Counsel, including analysis of damages calculations, in preparation for mediation.  Ex. 3 ¶5.  These are "precisely the types of activities that support awarding reimbursement of expenses to class

---

[15] *See also Moses v. New York Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023) (noting that class representatives "play an active role in the litigation – often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process[.]").

representatives" (*see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*21 (S.D.N.Y. Dec. 23, 2009)), and the amounts requested are consistent with awards in other complex cases.[16] Consequently, Lead Counsel respectfully requests that the Court approve the awards.

## IV.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the requested relief.

Dated: March 26, 2024

**GLANCY PRONGAY & MURRAY LLP**

By:  s/ Gregory B. Linkh
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
glinkh@glancylaw.com

Robert V. Prongay
Joseph D. Cohen (*admitted pro hac vice*)
Garth Spencer (GS-7623)
Christopher Fallon (*admitted pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
gspencer@glancylaw.com

*Lead Counsel for Lead Plaintiff Delton Rowe,*
*additional Plaintiffs Jeffrey Suh, Carl Enslin,*

---

[16] *See Veeco*, 2007 WL 4115808, at \*12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *In re Bank of Am. Corp, Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *FLAG Telecom*, 2010 WL 4537550, at \*31 (approving award of $100,000 to Lead Plaintiff for time spent on the litigation); *In re Virgin Mobile USA IPO Litig.*, No. 07-cv-5619 (SDW), ECF No. 146 at ¶19 (D.N.J. Dec. 8, 2010) (PSLRA awards to co-lead plaintiffs of $29,370, $29,205, $30,000, and $25,245 respectively, for a combined total of $113,820) (Ex. 14); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) ($100,000 collectively awarded to lead plaintiff group as reimbursement); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at \*2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500).

*Simone Heridis, and Soraya Heridis, and the Settlement Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867
hsmith@howardsmithlaw.com

*Additional Counsel for Lead Plaintiff Delton Rowe, additional Plaintiffs Jeffrey Suh, Carl Enslin, Simone Heridis, and Soraya Heridis, and the Settlement Class*

26