C44Qx121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DELTON ROWE, et al,

                Defendants,

            v.                          21 Civ. 2002 (JLR)

XL FLEET CORPORATION, ET AL.,

                Defendant.

------------------------------x
                                        New York, N.Y.
                                        April 30, 2024
                                        10:10 a.m.

Before:

                    HON. JENNIFER L. ROCHON,

                                        District Judge

                        APPEARANCES

GLANCY PRONGAY & MURRAY LLP
        Attorneys for Plaintiffs
BY:  GREGORY B. LINKH
     JOSEPH COHEN

TROUTMAN PEPPER HAMILTON SANDERS LLP
        Attorneys for Defendants XL FLEET AND SPRUCE
BY:  JAY A. DUBOW

WILLKIE FARR & GALLAGHER LLP
        Attorney for Defendants Ledecky Griffin & Brady
BY:  KRISTIN BENDER

McDERMOTT WILL & EMERY
        Attorney for Defendant Kazarinoff
BY:  CAITLYN M. CAMPBELL

ROPES & GRAY LLP
        Attorney for Defendant Hynes
BY:  ETHAN WEINBERG

(In open court; case called)

THE COURT:  Counsel, can I please have appearances.

MR. LINKH:  Good morning, your Honor.

Gregory Linkh from Glancy Prongay & Murray on behalf of plaintiffs.  I'm here with my partner, Joe Cohen.

THE COURT:  Good morning.

MR. COHEN:  Good morning.

THE COURT:  And for defense.

MR. DUBOW:  Jay Dubow, Troutman Pepper Hamilton Sanders on behalf of XL Fleet and Spruce, as well as all the individual defendants who are not represented by other counsel here.

THE COURT:  Thank you.

MS. BENDER:  Good morning, your Honor.

Kristin Bender, Willkie Farr & Gallagher on behalf of defendants Ledecky, Griffin and Brady.

THE COURT:  Good morning.

MS. CAMPBELL:  Good morning, your Honor.

Caitlyn Campbell from McDermott Will & Emery on behalf of defendant Kazarinoff.

MR. WEINBERG:  Good morning.

Ethan Weinberg Ropes & Gray for defendant Thomas J. Hynes.

THE COURT:  Perfect.  Thank you all.

We are deliberately starting a little bit later this

morning just to make sure if anybody wanted to come and object, we are here and waiting and able to take their objection. I note for the record there is no one in the courtroom other than counsel in terms of coming to this hearing, although we will be here for a bit of time, and so there is always time.

Mr. Linkh or Mr. Cohen, do you want to give me a little update of where we are right now in terms of anything subsequent to the filing of your papers?

MR. LINKH: There is really not much to say. I think we believe we've covered everything in our motion papers and our reply papers. Of course, if your Honor has any specific questions you'd like us to address, we'd be happy to do so.

Just in terms of some housekeeping matters, I can give you some numbers. We've earned thus far $213,706 in interest. The numbers of -- the notice numbers are slightly higher now. We have provided either email or mail notice to 248,786 members -- computed members or possible members. And, again, there's been no change in terms of -- we haven't heard anything more in any objections.

THE COURT: There are currently no objections.

MR. LINKH: None that we've heard of.

THE COURT: I'll ask counsel too.

MR. LINKH: And still only two opt-outs. One of the opt-outs had only five shares. The other one didn't tell us how many shares he had. We tried to reach out to him, and we

weren't able to get any answer.

THE COURT:  And neither of the opt-outs are institutional investors or anything like that?

MR. LINKH:  No.  They're both individuals.

Thus far in terms of claims, we have received 2,417 claims thus far.  We've determined there are 1,923 valid claims and 18 claims that we have found deficient, so we're reaching out to those folks to see if we can resolve those deficiencies. There are also 476 claims that will be recommended for rejection because they have no losses or they had a gain under the plan of allocation.  And we expect those numbers to grow in the coming weeks because the claims deadline is June 14.  And just as a matter of course, a lot of times we will see a lot of claims right at the deadline.

In terms of just going forward, assuming the Court approves the settlement today, we would be thinking talking with our claims administrator that they usually want about six months after the claims administration deadline -- or, I'm sorry, after the filing deadline to be able to resolve deficient claims.  Of course, if there are fewer deficient claims or they're resolved quicker, we will try to move this Court for a distribution more quickly.  But we're trying to aim for the end of 2024.

THE COURT:  Thank you.

MR. LINKH:  And that's all I have in terms of the

numbers.  If your Honor has any questions, we are ready to answer them.

THE COURT:  No, that's fine.  You'll represent here you're not aware of any Rule 11 violations by any party.

MR. LINKH:  That is correct.

THE COURT:  Thank you very much, Mr. Linkh.

Mr. Weinberg, Ms. Campbell, Mr. Dubow, Ms. Bender, anything that you'd like to add?

MR. DUBOW:  No, your Honor.  Nothing additional. We've heard no objections or anything more on any opt-outs that plaintiff's counsel has informed us.  And we're not aware of any Rule 11 violations.

THE COURT:  Thank you very much.

Ms. Bender, likewise?

MS. BENDER:  That's correct, your Honor, nothing to add.

THE COURT:  Thank you.

Ms. Campbell?

MS. CAMPBELL:  Same, your Honor.

THE COURT:  And Mr. Weinberg?

MR. WEINBERG:  Nothing further, your Honor.

THE COURT:  Thank you.

What I would propose doing -- thank you for your excellent papers as well -- is, I would ask for your patience and indulgence.  I am going to read into the record my opinion

so that you can get that as soon as possible. It's a bit lengthy, so sit back and relax.

But what I would ask is, is there any objection to me when I cite to a case simply saying "citation included" or "parenthetical included" and then providing the citation and the parenthetical to the court reporter to include on the transcript. It will then be reflected in the official transcript, but you don't need to sit here while I read 24 F.3d 393 (2d Cir.), et cetera. I got that trick from another judge.

Any objection to that, Mr. Linkh?

MR. LINKH: That's fine, your Honor.

THE COURT: Anything from defense counsel?

MR. DUBOW: That's fine, your Honor.

THE COURT: And the court reporter is good with that?

(Reporter replies)

THE COURT: Terrific. You'll have your complete record. It will just expedite things a bit on all of our parts.

This hearing was scheduled to consider approval of the proposed Settlement in the case of In re XL Fleet Securities Litigation, Case Number 1:22cv2002.

Lead Plaintiff Delton Rowe ("Lead Plaintiff") and additional named plaintiffs, Jeffrey Suh, Carl Enslin, Simone Heridis, and Soraya Heridis (collectively with the Lead Plaintiffs, as "Plaintiffs") on behalf of themselves and the

Settlement Class (the "Class"), seeks final approval of the class action settlement between the Class and defendants XL Fleet Corp. (now d/b/a "Spruce Power") ("XL Fleet"), Dimitri Kazarinoff, Thomas J. Hynes III, Brian Piern, Jonathan Ledecky, James H.R. Brady and Kevin Griffin (collectively, the "Individual Defendants"; and, together with XL Fleet, the "Defendants"). The Plaintiffs also seek the reaffirmation of the Court's prior preliminary certification of the Settlement Class, and the proposed plan of allocation of the proceeds of the Settlement, all for the purpose of effectuating the Settlement. Lead Counsel Glancy Prongay & Murray LLP further moves for an award of attorneys' fees and litigation expenses. Defendants do not Oppose these motions.

With respect to the approval motion, on January 18, 2024, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court preliminarily certified a Settlement Class for settlement purposes only. The Settlement Class was defined as: "All persons and entities that purchased or otherwise acquired the publicly traded common stock, units, and/or warrants of XL Fleet or Pivotal Investment Corporation II ("Pivotal"), purchased or otherwise acquired publicly traded XL Fleet or Pivotal call options, and/or wrote publicly traded XL Fleet or Pivotal put options, between September 18, 2020 and March 31, 2021, both dates inclusive and were damaged thereby. Excluded from the Settlement Class are: (a) persons who

suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer, and/or director of XL Fleet or Pivotal during the Settlement Class Period, and members of their immediate families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of XL Fleet and Pivotal; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their immediate families; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. For avoidance of doubt, "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by, or are under common control with one of the Defendants.  ECF No. 191 at 2-3, ¶1.  There have been no changes to the proposed class, and I now reaffirm the Court's approval of the class for purposes of final approval of the Settlement.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively

fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Under Federal Rule 23(e)(2), courts must consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

To determine procedural fairness, courts examine the negotiating process leading to the Settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). Courts in this Circuit have historically determined substantive fairness by analyzing the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974). "The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors." *See Pearlstein v. BlackBerry Limited,* 2022 WL 4554858, at *7 (SDNY Sept. 29, 2022); *see also In re Payment Card Interchange Fee & Merck Disc. Antitrust Litig.,* 330 F.R.D. 11, 29 (E.D.N.Y. Jan. 28, 2019) ("The Court understands the new Rule 23(e) factors to add

to, rather than displace the *Grinnell* factors.")).

The Court must consider the procedural and substantive fairness of the Settlement, "determining whether the terms of the Settlement and the negotiation process leading up to it are fair." *Flores v. CGI Inc.,* 2022 WL 13804077, at *3 (SDNY Oct. 21, 2022).

The Court will not presume fairness of the Settlement even if it arises from an arms-length agreement. *See Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("Rule 23(e)(2)'s procedural factors prohibit courts from applying a presumption of fairness to proposed settlements arising from an arms-length agreement"). Rather, the Court will evaluate all of the factors set forth in Rule 23(e)(2) including the proposed attorneys' fee award. *Id*.

For the reasons set forth below, the Settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell*, and, accordingly, the Court will approve the Settlement.

The Settlement is procedurally fair, reasonable, adequate, and not a product of collusion. Considering Rule 23(e)(2)(A) first, the Court considers whether the class representatives and class counsel have adequately represented the class. To show adequacy, courts look to whether the class representatives have conflicting interests with other class members and "whether counsel is qualified, experienced and generally able to conduct the litigation." *See Flores,* 2022 WL

13804077, at *4; *see also Soler v. Fresh Direct, LLC,* 2023 WL 2492977, at *3 (S.D.N.Y.  Mar. 14, 2023).

The Lead Plaintiffs here do not have interests that are antagonistic or at odds with the putative class. All purchased the common stock during the same period and were injured by common alleged false and misleading statements. The record here reflects that Lead Counsel are experienced and qualified in securities litigation and prosecuted this case vigorously for several years.  The Court also finds that the Settlement was reached after arms-length negotiations pursuant to Rule 23(e)(2)(B). The Settlement was reached after the parties engaged in a full day mediation session with Jed Melnick, several informal sessions with Mr. Melnick, and months of negotiations that included settlement meeting with Spruce Power's Chief Legal Officer. See Linkh Declaration (ECF No. 196), ¶¶ 31-35. The involvement of an experienced mediator, such as Mr. Melnick, supports a finding that the Settlement was negotiated at arms' length. *See Yang v. Focus Media Holding Ltd.,* 2014 WL 4401280, at *5 (S.D.N.Y. Sep. 4, 2014).

The negotiations were also undertaken after there had been substantial discovery by highly experienced counsel, including numerous depositions, document discovery, and nonparty document production. Linkh Decl. ¶¶ 18-28.  Here, given the adequacy of representation, the proceedings before Mr. Melnick, the pre-settlement discovery, and the parties'

months-long arms-length negotiations, I conclude that the Settlement is procedurally fair.

The Settlement is also substantively fair. Courts in this Circuit look to the *Grinnell* 9-factor test to assess the substantive fairness of a settlement and whether it is fair, reasonable and adequate, as required by Rule 23(e). *See, e.g. Flores,* 2022 WL 13804077, at *7; *Christine Asia Co.*, 2019 WL 5257534, at *10. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action throughout the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. "Not every factor must weigh in favor of the settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Christine Asia*, 2019 WL5257534, at *9 (citing *In re Glob. Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

Here, litigation through trial would be complex, expensive and long. Additional discovery, summary judgment

motions, pretrial motions and submissions, and trial regarding the complicated issues here would take significant time. Issues that are complex such as falsity, scienter, loss causation, and damages are all hotly contested and would require significant litigation and expert involvement. Therefore, the first *Grinnell* factor weighs in favor of final approval. *See Payment Card*, 330 F.R.D. at 36 ("Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial.").

With respect to the second *Grinnell* factor, the class members' reaction to the Settlement has been very positive. As of April 23, 2024, 248,786 notices were disseminated to potential Settlement Class Members, and there have been no objections to the settlement, plan of execution or application for attorneys' fees. That was confirmed also here during the fairness hearing. *See Pearlstein v. Blackberry Ltd*., 2022 WL4554858, at *3 (SDNY Sept. 29, 2022) (noting that the adequacy of the settlement is supported if there are only a small number of objections). There were also only 2 requests for exclusion. Those were by individual investors.  No institutional investors have objected to or requested exclusion from the settlement. Thus, I conclude that the overwhelmingly favorable response demonstrates that the Class approves of the Settlement and supports final approval. *See In re Signet*

*Jewelers Limited Sec. Litig.,* 2020 WL4196468, at \*6 (S.D.N.Y. July 21, 2020) ("The absence of any objections and the small number of requests for exclusion support a finding that the Settlement is fair, reasonable, and adequate.").

With respect to the third *Grinnell* factor, the stage of the proceeding, the parties have engaged in motion practice on a motion to dismiss, fact discovery, class certification motion practice, and more. These actions indicate that the parties "had adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004)).  Therefore, the third *Grinnell* factor weighs in favor of final approval.

Turning to the fourth and fifth Grinnell factors, the risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary Purpose of settlement is to avoid the uncertainty of a trial on the merits. *See Velez v. Majik Cleaning Serv., Inc.,* 2007 WL 7232783, at \*6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs would have faced numerous risks if they had continued to litigate, including with respect to proving scienter, falsity, and damages. The proposed settlement eliminates uncertainties regarding all of these substantive risks in the present litigation. These factors

therefore weigh in favor of final approval.

Relatedly, the risk of obtaining class certification and maintaining this action through trial is also present. Plaintiffs' claims would also have had to face a potential motion for summary judgment, again, class certification proceedings, and trial, all of which would have required further and extensive briefing, and also could have entailed additional appeals. Settlement eliminates the risks, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

Turning to the seventh *Grinnell* factor, there is nothing to suggest that Defendants would be unable to withstand a greater judgment, especially given the availability of some D&O insurance. "But a defendant is not required to empty its coffers before a settlement can be found adequate." *Shapiro v. JPMorgan Chase & Co.,* 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) Defendants' financial circumstances do not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the Settlement is fair, reasonable and adequate.

Finally, the amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re*

*Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000). Instead, "there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The Lead Plaintiffs seek approval here of a $19.5 million cash Settlement. This represents 3.9% to 7.8% of the maximum potential damages of $250M to $495M. Linkh Decl. ¶51. This recovery percentage exceeds median recoveries in other securities fraud class action settlements in 2023 and recovery in securities cases with similar damages that settled between January 2014 and December 2023, as demonstrated by the NERA Report submitted by Plaintiffs.  Linkh Decl. ¶51).  *See also Okla. Firefighters Pension & Ret. Sys.,* 2021 WL 76328, at *3 (noting that the settlement that was 10% of estimated damages was "within the range previously approved by judges in this district," referencing recoveries ranging from 3% to 11% of estimated damages).

Even if the Lead Plaintiffs were ultimately successful in obtaining a higher recovery after trial and appeals, they still would experience a significant delay in obtaining such relief and face considerable litigation expenses and attorneys' fees. For all of these reasons, I agree that the amount of this

immediate cash recovery is reasonable and that, therefore, this factor too weighs in favor of final approval.

Weighing all of the *Grinnell* factors, I find that the Settlement is substantively fair and weighs in favor of final approval.

Turning next to Rule 23(e)'s remaining factors, the proposed method of distribution is effective and consistent with standard means that are frequently used in securities class actions. See Fed. R. Civ. P. 23(e)(2)(C)(ii). The Settlement provides that proceeds will be distributed to members who submit eligible claim forms and documentation. They are processed through A.B. Data, an independent company with experience in securities class action administration. This process is necessary because neither the Plaintiffs nor Defendants possess investors' individualized trading data. This is an effective approach, and there have been no objections to this distribution mechanism. Finally, as will be discussed further shortly, the Plan of Allocation is fair and adequate.

The proposed award of attorneys' fees is fair and reasonable when the terms of the proposed award are considered. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As I will discuss further shortly, the proposed attorneys' fees of 33 1/3% of the Settlement Fund, to be paid upon approval by the Court, is reasonable in light of the work of Lead Counsel, their investment of resources in the case for the past several years

on a contingency basis, their prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and the overall benefit of the settlement achieved. To be clear, the Court is not reviewing the settlement agreement independent of the attorneys' fees requested given the Second Circuit's direction in *Moses*. *Moses*, 79 F.4th at 244. Rather, I am conducting a "symbiotic review" of the proposed settlement and the attorneys' fees to make sure that there is not an "unwarranted windfall for attorneys." *Id.* (quoting *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 49 (2d Cir. 2000).

The parties are also required to identify agreements entered into in connection with the Settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3) require that the parties seeking approval file a statement identifying any agreement made in connection with the proposal, and that I consider any such agreements in my evaluation of the settlement. Here, the parties have entered into a confidential Supplemental Agreement that states that Defendants may terminate the Settlement if shares held by persons who request exclusion from the Settlement Class reach a certain threshold. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.* 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *Signet*, 2020 WL 4196468, at *13 (same).  The very small

number of requests for exclusion also renders this agreement essentially a non-factor at this point.

Finally, the Settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). As discussed further, the plan of allocation provides that each eligible class member will receive a settlement amount based on a pro rata share of the net Settlement fund. Moreover, reimbursement of fees and expenses for the Lead Plaintiffs is reasonable for the reasons that will be discussed. Again, to be clear, I am evaluating the payments to the Lead Plaintiffs as part of the analysis under Fed. R. Civ. P. 23(e)(2)(D). *Moses* 79 F.4th at 244.

The Court will next evaluate the Plan of Allocation here to determine whether it is fair and adequate. "A plan of allocation need not be perfect," *EVCI*, 2007 WL 2230177, at *11 (collecting cases), or "tailored to the rights of each plaintiff with mathematical precision," *In re PaineWebber*, 171 F.R.D. at 133. Thus, "in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel." *EVCI*, 2007 WL 2230177, at *11. A plan is more likely to be reasonable "if recommended by experienced and competent counsel." *Villa v. Highbury Concrete Inc.*, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022).

Lead Counsel, who are experienced and competent in complex class actions, prepared the Plan of Allocation in

consultation with Plaintiffs' economic expert consultant. The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Action. Under the Plan of Allocation, each Authorized Claimant will receive their pro rata share of the Net Settlement Fund, which is the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Linkh Decl. ¶67. Prorated claims of less than $10 will not be distributed given that it is cost prohibitive. Linkh Decl. at ¶69. The plan of allocation was detailed in the notice and no objections were received.

Because the plan of allocation has a clear rational basis, equitably treats the class members, and was devised by experienced class counsel in consultation with an economic expert, the Court finds it fair and adequate. *See In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) (approving "pro rata distribution of the Net Settlement Fund among all Authorized Claimants based solely on if and when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during certain segments of the Class Period").

I will next evaluate the dissemination of notice here

to determine whether it satisfies Rule 23 and Due Process.

The Court entered the order preliminarily approving the class action settlement on January 18, 2024. Shortly thereafter, A.B. Data, the claims administrator, began mailing postcard notices to potential class members. Adam Walter, a director at A.B. Data, provided two declarations detailing the dissemination of notice and claims administration. ECF No. 196-1, 197-1. As of April 19, 2024, A.B. Data had disseminated 89,531 postcard notices to Settlement Class members or their nominees. ECF No. 197-1, ¶3-4. A.B. Data has also sent 159,255 email notices and claim forms. *Id*. ¶3.

In addition to mailing, the notice was published in *Investor's Business Daily* and Transmitted over the *PR Newswire*. ECF No. 196-1 at ¶12. Finally, A.B. Data set up a settlement website, where copies of the Notice, Claim Form, Amended Complaint, among other things, can be found and provided a toll free number for class members to call with questions. *Id*. ¶13-14.  The notice included all of the information required by Rule 23(c)(2)(B), the PSLRA, and the Southern District of New York's Local Rules. ECF No. 196-1.

I find that these efforts fairly and adequately advised class members of the terms of the Settlement, including the Plan of Allocation for the Settlement. The Notice informed class members of the deadline and manner in which they were required to submit a claim form to be eligible for a

distribution, and informed all class members of their rights, including their right to object to the Settlement and to attend the final fairness hearing today. I find that the notice and its distribution comported with all constitutional requirements, including those of due process.

The Court will next consider Lead Counsel's requests attorneys' fees. Lead Counsel requests attorneys' fees in the amount of 33 1/3% of the $19.5M Settlement Fund. ECF No. 195 ("Fees Mem.") at 1.  Lead Counsel also seeks reimbursement of $597,900.92 in expenses and costs incurred, and $25k for reimbursement of reasonable costs for the Court appointed Lead Plaintiff Delton Rowe, and $15k for each of named plaintiffs Jeffrey Suh, Carl Enslin, Simone Heridis, and Soraya Heridis.

The trend in the Second Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases, although the Court has discretion to award attorneys' fees based on either the lodestar method or the percentage-of-recovery method. *See Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019); *Wal-Mart Stores,* 396 F.3d at 121.

The Notice provided to Settlement Class Members advised that Lead Counsel would apply for an award not to exceed 33 1/3% of the Settlement Fund, plus reimbursement of litigation expenses in an amount not to exceed $726,000, which may include reimbursement to plaintiffs for their

representation of the settlement class in an amount not to exceed $105k. ECF No. 196-1 at 14. The notice informed class members of the process and deadline for objecting and no objections to the fees were filed. The amounts sought now fall under the estimates provided in the notice.

Reasonableness is the touchstone when determining whether to award attorney's fees. In *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the Settlement; and (6) public policy considerations. *Id.* at 50. The Court will evaluate each of these factors in turn.

Plaintiffs' Counsel's fee declarations show a total of 5,712.60 hours spent on the litigation over the course of litigating this action over three years.

The declarations detail how Lead Counsel performed tasks such as the following: (i) conducting a review of SEC filings, investor call transcripts and press releases, among other things; (ii) drafting and filing an initial complaint based on this analysis; (iii) filing a contested motion for appointment of lead plaintiff and lead counsel; (iv) researching and filing an amended complaint; (v) briefing and

opposing Defendants' motion to dismiss; (vi) conducting extensive discovery, including preparing and serving document requests as well as subpoenas to non-party witnesses, and deposing 16 individuals, as well as defending the depositions of the lead plaintiff and four other plaintiffs; (vii) targeted review and analysis of over one million pages of documents produced by defendants and third parties; (viii) engaging in mediation and followup sessions; (ix) filing a motion for class certification; (x) working with experts; and (xi) finalizing a proposed settlement and preparing related documents. *See, e.g.*, ECF No. 195 at 11-12.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *In re Prudential Sec. Inc. Ltd. P'ship Litig.,* 912 F. Supp. 97, 100 (S.D.N.Y. 1996). When reviewing securities class action settlements, federal courts have recognized that these actions are "notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc. IPO Sec. & Derivatives Litig.,* 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (internal quotation marks omitted) (courts recognize that "securities class actions are generally complex and expensive to prosecute") (quoting *In re Gilat Satellite Networks, Ltd.,* No. CV-02-1510, 2007 WL1191048, at *10 (E.D.N.Y. Apr. 19, 2007)). This case involves complex and disputed questions of

scienter, loss causation, and damages. Significant work was undertaken by Lead Counsel, as articulated previously. The amount sought by Lead Counsel is commensurate with the magnitude and complexity of this litigation.

As discussed, Lead Counsel faced significant risk in prosecuting this action and proving the merits of the claims. Although Lead Counsel prevailed on the motion to dismiss, the Court only addressed one of the five categories of alleged misstatements and omissions. Moreover, moving beyond the pleading stage, Lead Counsel would next need to be involved in aggressive litigation through further class certification proceedings, summary judgment, trial, and any appeals. All of this has been, and would continue to be, undertaken on a fully contingent basis, which also weighs in favor of a finding that the requested fees are reasonable. *See In re Flag,* 2010 WL4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

In terms of quality of representation Lead Counsel has considerable experience in major class action lawsuits, including securities class actions such as this. *See* ECF No. 196-2. Their firm has similarly developed strong reputations for their competent representation. *Id*. The Court has no reason to doubt the quality of their representation for plaintiffs

here.

The high quality of defense counsel opposing Plaintiffs' efforts further supports the caliber of representation that was necessary to achieve the Settlement. Defendants were represented in this case by experienced prominent defense firms, including Troutman Pepper Hamilton Sanders LLP, Wilmer Cutler Pickering Hale and Dorr LLP, Willkie Farr & Gallagher LLP, McDermott Will & Emery LLP, and Ropes and Gray LLP. ECF No. 196 ¶86. "The ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition confirms the quality of their representation of the Class." *In re Marsh ERISA Litig.,* 265 F.R.D. 128, 148 (S.D.N.Y. 2010); *see also Christine Asia Co.,* 2019 WL5257534, at *19 ("one marker of the quality of representation the Class received is the quality of the result obtained.").

Accordingly, I find that this *Goldberger* factor weighs in favor of approving the requested fee award.

In terms of The Requested Fee in Relation to the Settlement, generally courts will consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall. An award of 33 1/3% of the $19.5M settlement fund is within the range of reasonableness in light of other complex securities class action settlements in this Circuit. Plaintiffs have gathered a representative sample of

such cases at ECF No. 195 at 16-17.

Thus, evaluating the requested fee in relation to the settlement weighs in favor of approving the requested fee.

Finally, when determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). "Courts have, as a generic matter, frequently observed that the public policy of vigorously enforcing the federal securities laws must be considered in calculating an award." *In re BioScrip, Inc. Sec. Litig.,* 273 F. Supp. 3d 474, 502 (S.D.N.Y. 2017) (internal quotation marks omitted), aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr., 925 F.3d 63 (2d Cir. 2019); *see also Signet*, 2020 WL 4196468, at *21 ("strong public policy concern exists for bringing successful securities litigation"). The Lead Counsel's substantial effort here on a contingency basis to obtain recovery for a securities fraud serves the public interest.  Accordingly, public policy favors granting Lead Counsel's fee request.

Therefore, after considering all the Goldberger factors, the requested fee award appears to be reasonable.

But, as mentioned previously, to ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may crosscheck

the proposed award against counsel's lodestar. *See Goldberger,* 209 F.3d at 50. "Of course, where used as a mere crosscheck, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* Lead Counsel submitted a summary of time records detailing the billable rate and hours worked by the attorneys and professional staff who recorded time in this matter. ECF No. 196 at 28-29. I find that these billable rates, based on the timekeeper's title and market rates for similar professionals in their fields nationwide, and, in particular, here in New York, to be reasonable in this context.

As discussed, Plaintiffs' Counsel expended 5,712.60 hours in attorney and professional staff time over the course of this action. ECF No. 196 at ¶75. Based on the hourly rates and work performed, the total lodestar for Plaintiffs' Counsel is $4,654,954. *Id.*  And this does not include additional time that Lead Counsel will devote to overseeing and assisting in the administration of the Settlement. ECF No. 195 at 10.

Plaintiffs' Counsel's requested fee represents a crosscheck multiplier of 1.4 on Plaintiffs' Counsel's lodestar. This lodestar multiplier falls well within the range of multipliers typically awarded in this Circuit. "In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *Signet*, 2020 WL 4196468, at *16;

*Fleisher v. Phoenix Life Ins. Co.*, 2015 WL10847814, at \*18 (S.D.N.Y. Sept. 9, 2015) (internal quotation marks omitted) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit.") (collecting cases); *see also* cases cited at ECF No. 195 at 9-10.

Thus, the lodestar "crosscheck" confirms that Plaintiffs' Counsel's requested fees of 33 1/3% from the Settlement Fund are reasonable.

To sum up, the Court finds that the requested fee award of 33 1/3% of the Settlement Fund is reasonable. It is within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed, the factors established for the review of attorneys' fee awards in *Goldberger* supports the conclusion that the requested fee is reasonable.

This is a consideration in evaluating the fairness of the class action settlement as well, as I articulated earlier.

In terms of litigation expenses, Lead Counsel further moves the Court for reimbursement of $512,900.92 in litigation expenses, which include expert fees, deposition costs, legal research, mediation costs, and private investigator charges as well as other items. See ECF No. 196 ¶¶89-96. Lead Counsel has provided substantiation for the reasonableness of its costs, and courts routinely award such costs. *See In re Merrill Lynch*

*& Co., Inc. Research Reports Sec. Litig.,* 246 F.R.D. 156, 178 (S.D.N.Y. 2007) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation Expenses."); Fed. R. Civ. P. 23(h).

Lead Counsel is also seeking $85,000 in PSLRA awards to Plaintiffs for time spent prosecuting the action. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Christine Asia,* 2019 WL 5257534, at *20. The amount sought represents the value of time devoted to the action by the Lead Plaintiff and each of the other four named plaintiffs and was supported by detailed declarations of each with the hours that were expended that would have otherwise been devoted to their regular duties and daily work. ECF No. 196-3 to 196-7. *See In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of expenses of lead plaintiffs where "representative plaintiffs submitted affidavits to the district court that included a thorough

accounting of hours dedicated to the litigation and a statement that these hours constituted lost work time—an item for which §78u-4(a)(4) expressly allows recovery").

The Notice also informed potential Settlement Class members that Lead Counsel would seek reimbursement of no more than $726,000 in expenses, and the total reimbursement request falls below the maximum presented to the potential settlement class to which there was no objection.

The Court finds that the requested expenses are reasonable and necessary to the representation of the class, and Lead Counsel and Plaintiffs' motion for costs and expenses is granted. The reasonableness of the expenses also supports the reasonableness of the overall settlement under Rule 23.

Before I finally conclude, the PSLRA requires that for any private action under that Act, "upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 USC § 78u-4. I see that the parties and their counsel agreed in their stipulation and Agreement of Settlement dated December 6, 2023, "not to assert in any forum that this action was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis." ECF No. 182-1 ¶ 40. They also stipulated

that "No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action." *Id*. Parties also represented during this final fairness hearing that they are aware of no violations of Rule 11 in this case.

Based on these representations, and my independent review of the record, I find that the parties and their respective counsel have complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of this action.

Therefore, in conclusion, and based on all of the foregoing findings, I am reaffirming the Court's certification of the class for the purpose of effectuating the settlement. I approve the class action settlement of $19.5M, and approve the plan for allocating and distributing the net proceeds of the settlement. I award Lead Counsel attorneys' fees in the amount of 33 1/3% of the Settlement Fund; I award $512,900.92 for reasonable expenses incurred by Lead counsel; and $25,000 to Lead Plaintiff Delton Rowe, and $15k to each of the other four names Plaintiffs for their costs and expenses.

I will enter an order and judgment consistent with the parties' proposals that were presented at ECF Nos. 197-2, 197-3, 197-4 and I intend to do so later today.

Mr. Weinberg, are there any issues with any portion of my ruling or any changes that should be made to any of those proposed orders and judgment?

MR. WEINBERG:  Nothing from me, your Honor.

THE COURT:  Thank you.

And, Ms. Campbell, anything further?

MS. CAMPBELL:  No, your Honor.

THE COURT:  Mr. Dubow?

MR. DUBOW:  No, your Honor.

THE COURT:  Ms. Bender?

MS. BENDER:  No, your Honor.

THE COURT:  And Mr. Linkh, any issues with my ruling or anything that needs to change in the parties proposed orders?

MR. LINKH:  No, your Honor.

THE COURT:  And Mr. Cohen?

MR. COHEN:  No, your Honor.

THE COURT:  Okay.  Good.

Well, thank you for your patience.  Again, I wanted to make sure you had my full and complete ruling.

I just want to make sure that present in the courtroom we don't have any objectors.  This is to conclude.  We don't have any objectors.

And I will say that your papers were excellent.  Thank you for the preparation that went into this.  I wish you all

the best of luck in administering this settlement.  I hope it goes well.  I'm sure that it will.

If there is nothing further, court is adjourned.  Take care.

(Adjourned)